# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | |
|---|---|
| **LOYDA ALVAREZ, Individually and For Others Similarly Situated,**<br><br>      **Plaintiff,**<br><br>**v.**<br><br>**NES GLOBAL LLC,**<br>      **Defendant.** | **Case No. _____**<br><br>**JURY TRIAL DEMANDED**<br><br>**COLLECTIVE ACTION PURSUANT TO 29 U.S.C. § 216(b)**<br><br>**CLASS ACTION PURSUANT TO FED. R. CIV. P. 23** |

## ORIGINAL CLASS AND COLLECTIVE ACTION COMPLAINT

### SUMMARY

1. Plaintiff Loyda Alvarez (Alvarez) brings this lawsuit to recover unpaid overtime wages and other damages from NES Global LLC (NES) under the Fair Labor Standards Act (FLSA) and New Mexico Minimum Wage Act (NMMWA).

2. Alvarez worked for NES as a Project Scheduler.

3. Alvarez and the Day Rate Workers (as defined below) regularly worked for NES in excess of forty (40) hours each week.

4. But NES did not pay them overtime.

5. Instead of paying overtime as required by the FLSA, NES improperly paid Alvarez and the Day Rate Workers a daily rate with no overtime compensation.

6. This class and collective action seek to recover the unpaid overtime wages and other damages owed to these workers.

### JURISDICTION AND VENUE

7. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 216(b).

8.     The Court has supplemental jurisdiction over the NMMWA claims under 28 U.S.C. §
1367.

9.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because a substantial part
of the events or omissions giving rise to the claim occurred in this District.

10.    NES is headquartered in this District in Houston, Texas.

## THE PARTIES

11.    Alvarez worked for NES from approximately September 2019 until April 2020 as a
Project Scheduler.

12.    Throughout her employment, NES paid Alvarez a flat daily rate for each day worked
regardless of the total hours worked in a workweek ("day rate pay plan").

13.    Alvarez's consent to be a party plaintiff is attached as **Exhibit A**.

14.    Alvarez brings this action on behalf of herself and all other similarly situated workers
who were paid by NES's day-rate system.  NES paid each of these workers a flat amount for each day
worked and failed to pay them overtime for all hours that they worked in excess of 40 hours in a
workweek in violation of the FLSA.

15.    The FLSA class of similarly situated workers consists of:

**All individuals employed by or working on behalf of NES Global LLC and paid
according to its day rate pay plan in the past three (3) years.**

16.    Second, Alvarez represents a class of similarly situated workers under the NMMWA
pursuant to Federal Rule of Civil Procedure 23.

17.    The NMMWA Class is defined as:

**All individuals employed by or working on behalf of NES Global LLC and paid
according to its day rate pay plan in the past three (3) years in New Mexico.**

18.    Collectively, the FLSA Class and NMMWA Class is defined as the Day Rate Workers.

19.    NES is a company doing business throughout the United States.

20.     The identities of the Day Rate Workers can be readily ascertained from NES's records.

21.     NES Global LLC is Texas corporation and may be served with process by serving its registered agent: Lowri S. Thomas, One Memorial City Plaza, 800 Gessner, Suite 310, Houston, TX 77024.

## COVERAGE UNDER THE FLSA

22.     At all times hereinafter mentioned, NES was and is an employer within the meaning of the Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

23.     At all times hereinafter mentioned, NES was and is an enterprise within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r).

24.     At all relevant times, NES has been part of an enterprise engaged in commerce or in the production of goods for commerce within the meaning of section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1).

25.     At all relevant times, NES has, and has had, employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials (including tools, flashlights, smart phones/devices, badges, uniforms, computers, personal protection equipment, etc.) that have been moved in or produced for commerce.

26.     In each of the past 3 years, NES's annual gross volume of sales has exceeded $1,000,000 for at least the past 3 years.

27.     At all relevant times, Alvarez and the Day Rate Workers were engaged in commerce or in the production of goods for commerce.

28.     NES uniformly applied its policy of paying its Day Rate Workers, including Alvarez, a day rate with no overtime compensation.

29.     NES applied this policy regardless of any alleged individualized factors such as job position, job duties/responsibilities, or geographic location.

3

30.     By paying its workers a day rate with no overtime compensation, NES violated (and continues to violate) the FLSA's requirement that it pay employees at 1 and ½ times their regular rates for hours worked in excess of 40 in a workweek.

31.     As a result of this policy, NES and the Day Rate Workers do not receive overtime as required by the FLSA.

32.     NES's uniform compensation scheme of paying its workers a day rate with no overtime compensation for weeks in which these workers work over 40 hours is, in of itself, a violation of the FLSA. 29 U.S.C. § 207(a) & (e).

### THE FACTS

33.     NES is a staffing company that provides recruitment services to the oil and gas industry, among others. *See generally* https://www.NES.com/uoss (Last visited June 1, 2020).

34.     To complete its business objectives, it hires personnel (like Alvarez) to perform services for its customers.

35.     For example, Alvarez was hired by NES to provide services for XTO Energy in Carlsbad, New Mexico and Midland, Texas.

36.     Many of these individuals worked for NES on a day rate basis (without overtime pay).

37.     These workers make up the proposed collective of Day Rate Workers.

38.     While exact job titles and job duties may differ, these employees are subjected to the same or similar illegal pay practices for similar work.

39.     Throughout her employment with NES, NES paid her on a day rate basis.

40.     Alvarez and the Day Rate Workers work for NES under its day rate pay scheme.

41.     Alvarez and the Day Rate Workers do not receive a salary.

42.     For example, NES paid Alvarez a Retainer equal to two days of work under her daily rate. Although NES characterized this compensation as a salary, it was calculated on a daily, rather than weekly, rate.

43.     If Alvarez and the Day Rate Workers did not work, they did not get paid.

44.     Alvarez and the Day Rate Workers receive a day rate.

45.     Alvarez and the Day Rate Workers do not receive overtime pay.

46.     This is despite the fact Alvarez and the Day Rate Workers often worked 10 or more hours a day, for 7 days a week, for weeks at a time.

47.     Alvarez received a day rate for each day she worked for NES.

48.     Although she typically worked 7 days a week, for 10 or more hours a day, she did not receive any overtime pay.

49.     For example, in January 2020, Alvarez worked 29 consecutive days, and was paid a flat daily rate for all hours worked.

50.     Alvarez and the Day Rate Workers received the day rate regardless of the number of hours they worked in a week, even when they worked more than 40 hours.

51.     Alvarez and the Day Rate Workers are not employed on a salary basis.

52.     Alvarez and the Day Rate Workers do not, and never have, received guaranteed weekly compensation from NES irrespective of the day worked (i.e., the only compensation they receive is the day rate they are assigned for all hours worked in a single day or week).

53.     Alvarez and the Day Rate Workers work in accordance with the schedule set by NES and/or its clients.

54.     Alvarez's work schedule is typical of the Day Rate Workers.

55.     NES controls Alvarez and the Day Rate Workers' pay.

56.     Likewise, NES and/or its clients control Alvarez and the Day Rate Workers' work.

57. NES requires Alvarez and the Day Rate Workers to follow NES and/or its clients' policies and procedures.

58. Alvarez and the Day Rate Workers' work must adhere to the quality standards put in place by NES and/or its clients.

59. Alvarez and the Day Rate Workers are not required to possess any unique or specialized skillset (other than that maintained by all other workers in their respective positions) to perform their job duties.

60. As a Project Scheduler, Alvarez was for the liaison between construction contractors and management on the job site. Alvarez compared the day-to-day activities of contractors with the pre-determined construction plans and schedules. Alvarez reported the status of construction activities and did not have discretion to alter the construction plan.

61. Alvarez and the Day Rate Workers provide regular job reports to NES (and/or its clients') personnel. For example, Alvarez provided weekly reports describing construction activities on the job site.

62. At all relevant times, NES and/or its clients maintained control over Alvarez and the Day Rate Workers via hiring, firing, discipline, timekeeping, payroll, and other employment practices.

63. Alvarez and the Day Rate Workers do not have the power to hire or fire any employees.

64. Alvarez's working relationship with NES is similar NES's relationship with its other Day Rate Workers.

65. NES knew Alvarez and the Day Rate Workers worked more than 40 hours in a week.

66. NES knew, or showed reckless disregard for, whether the Day Rate Workers were entitled to overtime under the FLSA.

67. Nonetheless, NES failed to pay Alvarez and the Day Rate Workers overtime.

68. NES willfully violated the FLSA.

### CAUSES OF ACTION
### FLSA VIOLATIONS

69.     By failing to pay Alvarez and those similarly situated to her overtime at one-and-one-half times their regular rates, NES violated the FLSA's overtime provisions.

70.     NES owes Alvarez and those similarly situated to her the difference between the rate actually paid and the proper overtime rate.

71.     Because NES knew, or showed reckless disregard for whether, its pay practices violated the FLSA, NES owes these wages for at least the past three years.

72.     NES is liable to Alvarez and those similarly situated to her for an amount equal to all unpaid overtime wages as liquidated damages.

73.     Alvarez and those similarly situated to her are entitled to recover all reasonable attorneys' fees and costs incurred in this action.

### NMMWA VIOLATIONS

74.     Alvarez brings this claim under the NMMWA as a Rule 23 class action.

75.     The conduct alleged violates the NMMWA (NMSA § 50-4-22).

76.     At all relevant times, NES was subject to the requirements of the NMMWA.

77.     At all relevant times, NES employed Alvarez and each Class Member with New Mexico state law claims as an "employee" within the meaning of the NMMWA.

78.     The NMMWA requires employers like NES to pay employees at one and one-half (1.5) times the regular rate of pay for hours worked in excess of 40 hours in any one week. Alvarez and each member of the New Mexico Class are entitled to overtime pay under the NMMWA.

79.     NES had a policy and practice of misclassifying Alvarez and each member of the New Mexico class as exempt and failing to pay these workers overtime for hours worked in excess of 40 hours per workweek.

80.     Alvarez and each member of the New Mexico Class seek unpaid overtime in amount equal to 1.5 times the regular rate of pay for work performed in excess of 40 hours in a workweek, prejudgment interest, all available penalty wages, and such other legal and equitable relief as the Court deems just and proper.

81.     Alvarez and each member of the New Mexico Class also seek recovery of attorneys' fees, costs, and expenses of this action, to be paid by NES, as provided by the NMMWA.

82.     The improper pay practices at issue were part of a continuing course of conduct, entitling Alvarez and New Mexico Class Members to recover for all such violations, regardless of the date they occurred.

### CLASS AND COLLECTIVE ACTION ALLEGATIONS

83.     Alvarez incorporates all previous paragraphs and alleges that the illegal pay practices NES imposed on Alvarez were likewise imposed on the Putative Class Members.

84.     Numerous individuals were victimized by this pattern, practice, and policy which is in willful violation of the FLSA and NMMWA.

85.     Numerous other individuals who worked with Alvarez indicated they were paid in the same manner, performed similar work, and were not properly compensated for all hours worked as required by state and federal wage laws.

86.     Based on her experiences and tenure with NES, Alvarez is aware that NES's illegal practices were imposed on the Day Rate Workers.

87.     The Day Rate Workers were all not afforded the overtime compensation when they worked in excess of forty (40) hours per week.

88.     NES's failure to pay wages and overtime compensation at the rates required by state and/or federal law result from generally applicable, systematic policies, and practices which are not dependent on the personal circumstances of the Day Rate Workers.

89.     Alvarez's experiences are therefore typical of the experiences of the Day Rate Workers.

90.     The specific job titles or precise job locations of the Day Rate Workers do not prevent class or collective treatment.

91.     Alvarez has no interests contrary to, or in conflict with, the Day Rate Workers. Like each Day Rate Worker, Alvarez has an interest in obtaining the unpaid overtime wages owed to her under federal law.

92.     A class and collective action, such as the instant one, is superior to other available means for fair and efficient adjudication of the lawsuit.

93.     Absent this action, many Day Rate Workers likely will not obtain redress of their injuries and NES will reap the unjust benefits of violating the FLSA and applicable state labor laws.

94.     Furthermore, even if some of the Day Rate Workers could afford individual litigation against NES, it would be unduly burdensome to the judicial system.

95.     Concentrating the litigation in one forum will promote judicial economy and parity among the claims of individual members of the classes and provide for judicial consistency.

96.     The questions of law and fact common to the Day Rate Workers predominate over any questions affecting solely the individual members. Among the common questions of law and fact are:

a.      Whether the Day Rate Workers' rights were violated as a result of NES's day rate pay plan;

b.      Whether NES's day rate pay plan was made in good faith;

c.      Whether NES's decision to not pay time and a half for overtime to the Day Rate Workers was made in good faith;

d.      Whether NES's violation of the FLSA and NMMWA was willful; and

     e.      Whether NES's illegal pay practices were applied uniformly across the nation to all Day Rate Workers.

97.     Alvarez's claims are typical of the claims of the Day Rate Workers. Alvarez and the Day Rate Workers sustained damages arising out of NES's illegal and uniform employment policy.

98.     Alvarez knows of no difficulty that will be encountered in the management of this litigation that would preclude its ability to go forward as a collective or class action.

99.     Although the issue of damages may be somewhat individual in character, there is no detraction from the common nucleus of liability facts. Therefore, this issue does not preclude collective treatment.

## JURY DEMAND

100.     Alvarez demands a trial by jury

## PRAYER

101.     WHEREFORE, Alvarez prays for judgment against NES as follows:

     a.      An Order designating this lawsuit as a collective action and permitting the issuance of a notice pursuant to 29 U.S.C. § 216(b) to all similarly situated individuals with instructions to permit them to assert timely FLSA claims in this action by filing individual Consents to Sue pursuant to 29 U.S.C. § 216(b);

     b.      For an Order pursuant to Section 16(b) of the FLSA finding NES liable for unpaid back wages due to Alvarez and the FLSA Class Members for liquidated damages equal in amount to their unpaid compensation;

     c.      For an order designating the NMMWA class as a class action pursuant to Fed. R. Civ. P. 23;

     d.      For an order finding NES liable for all unpaid overtime owed under the NMMWA at the highest available rates allowed by law;

e.      For an order appointing Alvarez and her counsel to represent the interests of the federal collective and the New Mexico class;

f.      For an Order awarding Alvarez and the Day Rate Workers their reasonable attorneys' fees and expenses as provided by the FLSA and NMMWA;

g.      For an Order awarding attorneys' fees, costs and pre- and post-judgment interest; and

h.      For an Order granting such other and further relief as may be necessary and appropriate.

Respectfully submitted,

By: */s/ Michael A. Josephson*

**Michael A. Josephson**
Texas Bar No. 24014780
Fed Id. 27157
**Andrew W. Dunlap**
Texas Bar No. 24078444
Fed Id. 1093163
**Carl A. Fitz**
Texas Bar No. 24105863
Fed Id. 3158237
**JOSEPHSON DUNLAP LLP**
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
713-352-1100 – Telephone
713-352-3300 – Facsimile
mjosephson@mybackwages.com
adunlap@mybackwages.com
cfitz@mybackwages.com

**AND**

**Richard J. (Rex) Burch**
Texas Bar No. 24001807
Fed Id. 21615
**BRUCKNER BURCH PLLC**
8 Greenway Plaza, Suite 1500
Houston, Texas 77046
713-877-8788 – Telephone
713-877-8065 – Facsimile
rburch@brucknerburch.com
**ATTORNEYS IN CHARGE FOR PLAINTIFF**