# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | |
|---|---|
| LOYDA ALVAREZ, individually and on behalf of all others similarly situated,<br><br>v.<br><br>NES GLOBAL, LLC, | Civil Action No. 4:20-cv-01933<br><br>Jury Trial Demanded |

## PLAINTIFF'S MOTION FOR CONDITIONAL CERTIFICATION

Michael A. Josephson
Texas Bar No. 24014780
Fed. ID No. 27157
Andrew W. Dunlap
Texas Bar No. 24078444
Fed. ID No. 1093163
Carl A. Fitz
Texas Bar No. 24105863
Fed. ID No. 3158237
JOSEPHSON DUNLAP, LLP
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
Tel: (713) 352-1100
Fax: (713) 352-3300
mjosephson@mybackwages.com
adunlap@mybackwages.com
cfitz@mybackwages.com

Richard J. (Rex) Burch
Texas Bar No. 24001807
Fed. Id. 21615
BRUCKNER BURCH PLLC
8 Greenway Plaza, Suite 1500
Houston, Texas 77046
Tel: (713) 877-8788
Fax: (713) 877-8065
rburch@brucknerburch.com

ATTORNEYS IN CHARGE FOR PLAINTIFFS AND THE PUTATIVE CLASS MEMBERS

**Table of Contents**

1.   Introduction. ........................................................................................................................1
2.   The Putative Class Members' Similar Pay at NES...............................................................1
    2.1   Alvarez and the Day Rate Workers Regularly Worked Overtime. ............................2
    2.2   Alvarez and the Day Rate Workers Were Compensated a Flat Daily Rate. ..............2
3.   Conditional Certification is Appropriate..............................................................................3
    3.1   Conditional Certification is warranted when employees are "similarly situated." ....3
    3.2   The Fifth Circuit Uses the Two-Stage Lusardi Approach—a Lenient Notice Standard Typically Resulting in Conditional Certification...................................................................4
    3.3   Plaintiffs are similarly situated to other Putative Class Members. ............................6
    3.4   Day Rate Compensation Schemes are Well-Suited for Conditional Certification....7
4.   Judicial Notice is Appropriate. .............................................................................................9
    4.1   The production of contact information is routine in FLSA collective actions. ........9
    4.2   Email and text message notice should be provided to Putative Class Members. ...10
5.   Conclusion..........................................................................................................................12

**TABLE OF EXHIBITS**

| Ex. | Document |
|---|---|
| 1 | Declaration of Alvarez |
| 2 | Declaration of Rodriguez |
| 3 | Declaration of Hippler |
| 4 | Declaration of Magee |
| 5 | Alvarez Offer Letter |
| 6 | Rodriguez Offer Letter |
| 7 | E-Mail Correspondence Subject: RE: Pay period 4/13-4/26 |
| 8 | Summary of Alvarez's Voluminous Paystubs and Timesheets |
| 9 | *Richardson v. NES Global LLC* Order |
| 10 | Proposed Notice and Consent Forms |

## TABLE OF AUTHORITIES

*Acevedo v. Allsup's Convenience Stores, Inc.*,
 600 F.3d 516 (5th Cir. 2010) .................................................................................. 2, 3
*Albanil v. Coast 2 Coast, Inc.*, C.A. 4:08-cv-00486,
 2008 WL 4937565 (S.D. Tex. Nov. 17, 2008) ................................................................ 3
*Beall v. Tyler Technologies, Inc.*,
 No. Civ. A. 2-08-CV-422, 2009 WL 3064689 (E.D. Tex. Sept. 23, 2009) ........................... 8
*Bradbury v. Transglobal Services, LLC, et al.*,
 Civ. A. No. 7:18-cv-00036-DC, 2018 WL 3603078 (W.D. Tex. June 16, 2018) ................. 3
*Bradbury, et al. v. Transglobal Services, LLC, et al.*, Civ. A. No. 7:18-cv-00036-DC,
 2018 WL 3603078 (W.D. Tex. June 16, 2018) .......................................................... 2, 3, 4
*Burton v. Agility Energy, Inc.*,
 Civ. A. No. 7:17-cv-00204-DC, 2018 WL 2996909 (W. D. Tex. May 4, 2018) ............ 2, 3, 4
*Coffin v. Blessey Marine Services, Inc.*,
 2011 WL 1103795 (S.D. Tex. Mar. 23, 2011) ............................................................... 4
*Davis v. Westgate Planet Hollywood Las Vegas, LLC*,
 No. Civ. A. 2:08-CV-00722-RCJ-PAL, 2009 WL 102735 (D. Nev. Jan. 12, 2009) ............. 8
*De La Rosa Ortiz v. Rain King, Inc.*,
 2003 WL 23741409 (S.D. Tex. Mar. 10, 2003) ............................................................. 4
*Desert Palace, Inc. v. Costa*,
 539 U.S. 90 (2003) ........................................................................................................ 2
*Dyson v. Stuart Petroleum Testers, Inc.*,
 308 F.R.D. 510 (W..D. Tex. 2015) ........................................................................... 8, 10
*Field v. Anadarko Petroleum Corp.*,
 No. 4:20-cv-575, 2020 WL 6075633, at *2 (S.D. Tex. Oct. 15, 2020) .......................... 2, 8
*Garner v. G.D. Searle*,
 802 F. Supp. 418 (M.D. Ala. 1991) ............................................................................. 4
*Heeg v. Adams Harris, Inc.*,
 907 F. Supp. 2d 856 (S.D. Tex. 2012) ......................................................................... 4
*Hewitt v. Helix Energy Solutions Group, Inc.*,
 956 F.3d 341, 344 (5th Cir. 2020) ............................................................................... 7
*Hoffman-La Roche, Inc. v. Sperling*,
 493 U.S. 165 (1989) ...................................................................................................... 8
*Lang v. DirecTV, Inc.*,
 735 F. Supp. 2d 421 (E.D. La. 2010) ........................................................................... 3
*Mooney v. Aramco Servs. Co.*,
 54 F.3d 1207 (5th Cir. 1995) .............................................................................. 2, 3, 4
*Moore v. Maverick Natural Resources, LLC*,
 No. H-20-591, 2020 WL 6431901, at *2 (S.D. Tex. Oct. 15, 2020) ................................ 6
*Repass v. TNT Crane & Rigging, Inc.*,
 Civ. A. No. 7:18-CV-00107-DC-RCG, 2019 WL 493820 (W.D. Tex. Jan. 17, 2019) ......... 4
*Richardson v. NES Global LLC*,
 No. 4:20-cv-00223, Dkt. 40 (S.D. Tex. May 20, 2020) ................................................... 4
*Sandoz v. Cingular Wireless LLC*,
 553 F.3d 913 (5th Cir. 2008) ....................................................................................... 3
*Snead v. EOG Res., Inc.*,

    5:16-CV-1134-OLG, 2018 WL 1151138 (W.D. Tex. Feb. 13, 2018) ..................................................2

*Solis v. Hooglands Nursery, L.L.C.*,
    372 F. App'x 528 (5th Cir. 2010) ..........................................................................................5

*Sperling v. Hoffmann-La Roche, Inc.*,
    118 F.R.D. 392 (D.N.J. Jan. 5, 1988) ...................................................................................4

*Stoute v. Bison Logistics, LLC d/b/a Source Energy Solutions*,
    Civ. A. No. 7:18-cv-0228-DC-RCG, 2019 WL 4061707 (W.D. Tex. June 10, 2019) ..........................4

*Tamez v. BHP Billiton Petroleum (Americas), Inc.*,
    2015 WL 7075971 (W.D. Tex. Oct. 5, 2015) ........................................................................5

*Tolentino v. C&J Spec-Rent Services, Inc.*, C.A. 2:09-cv-00326,
    2010 WL 2196261 (S.D. Tex. May 26, 2010) .......................................................................3

*Villarreal v. St. Luke's Episcopal Hosp.*,
    751 F. Supp. 2d 902 (S.D. Tex. 2010) .................................................................................5

*Villatoro, v. Kim Son. Rest., LP,*
    286 F. Supp. 2d 807 (S.D. Tex. 2015) .................................................................................4

*Walker v. Honghua Am., LLC,*
    870 F. Supp. 2d 462 (S.D. Tex. 2012) .................................................................................3

*Wellman v. Grand Isle Shipyard, Inc.*,
    No. Civ.A. 14-831, 2014 WL 5810529 (E.D. La. Nov. 7, 2014) ..........................................6

1. **INTRODUCTION.**

Plaintiff Loyda Alvarez (Alvarez) seeks conditional certification pursuant to 29 U.S.C. § 216(b) against NES Global, LLC (NES) for the following FLSA class of workers who were paid a day rate::

> **All individuals employed by or working on behalf of NES Global, LLC who were paid a day rate with no overtime in the past three years** (the "Day Rate Workers").

The Day Rate Workers were (1) employees of NES; (2) paid a day-rate; (3) without overtime compensation. Alvarez's evidence meets and surpasses the Fifth Circuit's lenient standard for conditional certification, and the Court should certify this collective action and order notice to be sent to putative class members. *See Field v. Anadarko Petroleum Corp.,* No. 4:20-CV-00575, 2020 WL 6075633, at *6 (S.D. Tex. Oct. 15, 2020) ("A class that encompasses a wide range of job positions may be conditionally certified as long as the differences between class members are not material to the allegations in the case").

2. **THE PUTATIVE CLASS MEMBERS' SIMILAR PAY AT NES.**

NES Global staffs workers throughout the United States primarily in the oil and gas, power and renewables, life sciences, chemical, and mining industries. *See* https://www.nesgt.com/about (last visited Oct. 23, 2020). To provide these services, NES Global employs numerous workers at locations throughout the Country who it pays using a day rate pay plan. *See* Ex. 1, Alvarez Decl. at ¶ 2; Ex. 2, Rodriguez Decl. at ¶ 2; Ex. 3, Hippler Decl. at ¶ 2; Ex. 4, Magee Decl. at ¶ 2. NES required these employees to work well in excess of 40 hours per week. Ex. 1, Alvarez Decl, at ¶¶ 4, 5; Ex. 2, Rodriguez Decl. at ¶¶ 4, 5 Hippler Decl. at ¶ 4, 5; Ex. 4, Magee Decl. at ¶ 4, 5. But NES paid day rate with no overtime pay and no weekly guarantee of hours worked. Ex. 1 at ¶¶ 3, 6; Ex. 2 at ¶¶ 3, 6; Ex. 3 at ¶¶ 3, 6; Ex. 4 at ¶¶ 3, 6; Ex. 5 (Alvarez Offer Letter); Ex. 6 (Rodriguez Offer Letter); Ex. 7 (E-Mail Correspondence); Ex. 8 (Summary of Alvarez Paystubs and Timesheets Pursuant to FRE 1006).

**2.1    Alvarez and the Day Rate Workers Regularly Worked Overtime.**

Alvarez and the Day Rate Workers customarily worked more than 40 hours a week Ex. 1, at ¶¶ 4, 5, 14; Ex. 2, at ¶¶ 4, 5, 14; Ex. 3, at ¶¶ 4, 5, 14; Ex. 4, at ¶¶ 4, 5, 14. NES paid Alvarez and the Day Rate Workers the same day rate for each day worked, regardless of whether they worked over or under 40 hours that week. Ex. 1, at ¶ 6; Ex. 2, at ¶ 6; Ex. 3, at ¶ 6; Ex. 4, at ¶ 6. Despite regularly working over 50 hours in a week, Alvarez and the Day Rate Workers did not receive overtime compensation under NES's day-rate policy. Ex. 1, at ¶ 5-6; Ex. 2, at ¶ 5-6; Ex. 3, at ¶ 5-6; Ex. 4, at ¶ 5-6. Indeed, NES did not pay them any guaranteed compensation for the weeks or days they did not work, a practice fatal to any exemption defenses. Ex. 1, at ¶¶ 8, 9; Ex. 2, at ¶¶ 8. 9; Ex. 3, at ¶¶ 8. 9; Ex. 4, at ¶¶ 8. 9.

**2.2    Alvarez and the Day Rate Workers Were Compensated a Flat Daily Rate.**

Alvarez's and the Day Rate Workers customarily worked more than 40 hours a week Ex. 1, at ¶¶ 4, 5, 14; Ex. 2, at ¶¶ 4, 5, 14; Ex. 3, at ¶¶ 4, 5, 14; Ex. 4, at ¶¶ 4, 5, 14. Alvarez's offer letter demonstrates that she was paid a daily rate of $560 per day worked. Ex. 5.

> Additional Daily Rate    In the event the Personnel works more than the days to meet the Retainer, Personnel will be paid on a Daily Rate of **USD $560.00** for all additional days worked.

Ex. 5. Similarly, Rodriguez's offer letter demonstrates that he was compensated an $800 daily rate each day he performed work. Ex. 6.

> Additional Daily Rate    In the event the Personnel works more than the days to meet the Retainer, Personnel will be paid on a Daily Rate of **USD $800.00** for all additional days worked.

Ex. 6. In response, NES will likely argue these day rates were paid additional to Plaintiffs' weekly "Retainer" when Plaintiffs worked greater than two days in a workweek. However, the purported Retainer simply reflects Plaintiffs' respective day rates over the course of two days. *See* Ex. 5 (Alvarez's purported Retainer equaled $1,120.00 for two days' work); Ex. 6 (Rodriguez's purported Retainer equaled $1,600.00 for two days' work). The fact that Plaintiffs were paid a day rate is further

2

demonstrated by e-mail correspondence to Magee from an NES payroll coordinator, who refers to his compensation as a "daily rate." Ex. 7. Finally, Alvarez submits a summary of her voluminous timesheets and payroll records demonstrating that NES paid her a day rate throughout her tenure. Ex. 8. Notably, NES reduced Alvarez's day rate when she worked partial days. *See, e.g., id.* at 1/3/2020 (compensating Alvarez for 2.5 days worked).

**3. CONDITIONAL CERTIFICATION IS APPROPRIATE.**

**3.1 Conditional Certification is warranted when employees are "similarly situated."**

The FLSA's "collective action" provision allows one or more employees to bring an action for overtime compensation on "behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b). Under Section 216(b), an employee need only show that he is suing his employer for himself and on behalf of other employees "similarly situated." *Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1213-16 (5th Cir. 1995) *overruled on other grounds by Desert Palace, Inc. v. Costa*, 539 U.S. 90, 90–91 (2003); *Field v. Anadarko Petroleum Corp.*, No. 4:20-cv-575, 2020 WL 6075633, at *2 (S.D. Tex. Oct. 15, 2020) (citing *Walker v. Honghua Am., LLC*, 870 F. Supp. 2d 462, 465–66 (S.D. Tex. 2012)); *Bradbury, et al. v. Transglobal Services, LLC, et al.*, Civ. A. No. 7:18-cv-00036-DC, 2018 WL 3603078 at *3 (W.D. Tex. June 16, 2018) (citing *Acevedo v. Allsup's Convenience Stores, Inc.*, 600 F.3d 516, 519 (5th Cir. 2010)); *Avila v. SLSCO, Ltd.*, No. 3:18-CV-00426, 2020 WL 1891691, at *1 (S.D. Tex. Feb. 10, 2020) (collecting cases).

The plaintiff's claims need not be **identical** to the potential opt-ins; but rather, they need only be **similar**. *Bradbury*, 2018 WL 3603078 at *3 ("A plaintiff is not required to show that putative class members are identical.") (citing *Walker v. Honghua Am., LLC*, 870 F. Supp. 2d 462, 468 (S.D. Tex. 2012)). "[T]he court need not find uniformity in each and every aspect of employment to determine [that] a class of employees is similarly situated. The remedial nature of the FLSA militate strongly in favor of allowing cases to proceed collectively." *Tolentino v. C&J Spec-Rent Services, Inc.*, C.A. 2:09-cv-

00326, 2010 WL 2196261, at *4 (S.D. Tex. May 26, 2010) (citing *Albanil v. Coast 2 Coast, Inc.*, C.A. 4:08-cv-00486, 2008 WL 4937565, at *3 (S.D. Tex. Nov. 17, 2008)). Here, the Day Rate Workers all were paid in the same manner and were all misclassified by NES as exempt. *See* Ex. 1 at ¶¶ 7, 14, 15; Ex. 2 at ¶¶ 7, 14, 15; Ex. 3 at ¶¶ 7, 14, 15; Ex. 4 at ¶¶ 7, 14, 15.

### 3.2 The Fifth Circuit Uses the Two-Stage Lusardi Approach—a Lenient Notice Standard Typically Resulting in Conditional Certification.

In the Fifth Circuit, the "typical" method for administering collective actions is the "two-step" *Lusardi* approach. *Sandoz v. Cingular Wireless LLC*, 553 F.3d 913, 915 n.2 (5th Cir. 2008); *Lang v. DirecTV, Inc.*, 735 F. Supp. 2d 421, 434-435 (E.D. La. 2010). Under the *Lusardi* approach, the court "determines whether the putative class members' claims are sufficiently similar" to authorize notice to potential class members. *Acevedo*, 600 F.3d at 519 (citing *Mooney*, 54 F.3d at 1213-14). At this initial state of the *Lusardi* approach a plaintiff need only make a minimal showing to persuade the court to issue notice to potential class members. *See*, *e.g.*, *Bradbury*, 2018 WL 3603078 at *3 ("this determination is made using a fairly lenient standard, and typically resulting in conditional certification of a representative class." (citations omitted)); *Burton*, 2018 WL 2996909 at *2-3.

The lenient standard at the conditional certification stage was previously applied by Judge Rosenthal in the *Richardson v. NES Global LLC* matter currently pending in the Southern District of Texas. On May 20, 2020, Judge Rosenthal conditionally certified two classes of hourly NES employees that were paid straight time for overtime. *See Richardson v. NES Global LLC*, No. 4:20-cv-00223, Dkt. 40 (S.D. Tex. May 20, 2020) (Exhibit 9). In the *Richardson* matter, plaintiffs presented evidence of a common compensation policy of paying hourly workers straight time for overtime. Likewise, Alvarez and the Day Rate Workers allege NES's day rate pay plan violates the FLSA and warrants conditional certification.

Indeed, in deciding whether to issue notice, courts only require "substantial allegations that the putative class members were together the victims of a single decision, policy, or plan." *Mooney*, 54

F.3d at 1214, n.8; *Heeg v. Adams Harris, Inc.*, 907 F. Supp. 2d 856, 862 (S.D. Tex. 2012) (Rosenthal, J.); *Bradbury*, 2018 WL 3603078 at *3-4; *Burton*, 2018 WL 2996909 at *5. Doing otherwise would unnecessarily hinder the development of collective actions and would undermine the "broad remedial goals" of the FLSA. *Garner v. G.D. Searle*, 802 F. Supp. 418, 422 (M.D. Ala. 1991); *Sperling v. Hoffmann-La Roche, Inc.*, 118 F.R.D. 392, 407 (D.N.J. Jan. 5, 1988) ("[N]otice to absent class members need not await a conclusive finding of 'similar situations.'").

A plaintiff meets his burden showing that there are similarly situated employees who are potential claimants by making "a modest factual showing sufficient to demonstrate that they and potential plaintiffs together were victims of a common policy or plan that violated the law." *See Mooney*, 54 F.3d at 1214, n.9; *Villatoro v. Kim Son. Rest., LP,* 286 F. Supp. 2d 807, 810 (S.D. Tex. 2015). Further, the plaintiff need only demonstrate "a reasonable basis" that a class of similarly situated persons exists. *De La Rosa Ortiz v. Rain King, Inc.*, 2003 WL 23741409 (S.D. Tex. Mar. 10, 2003) (even just a single declaration and the complaint are sufficient); *Bradbury*, 2018 WL 3603078 at *2 (two declarations sufficient); *Stoute*, 2019 WL 4061707 at *4 (collecting cases). A court may deny a plaintiff's right to proceed collectively **only if** the action arises from circumstances purely personal to the plaintiff, and not from any generally applicable policy or practice. *Coffin v. Blessey Marine Services, Inc.*, 2011 WL 1103795, at *2 (S.D. Tex. Mar. 23, 2011).

"After the class members have opted in and discovery is complete, the defendant may then file a decertification motion—the second stage of the *Lusardi* approach—asking the court to reassess whether the class members are similarly situated. At that point, the court will fully evaluate the merits of the class certification." *Repass v. TNT Crane & Rigging, Inc.*, Civ. A. No. 7:18-CV-00107-DC-RCG, 2019 WL 493820, at *2 (W.D. Tex. Jan. 17, 2019).

### 3.3 Plaintiffs are similarly situated to other Putative Class Members.

NES's day-rate policy failed to compensate Plaintiffs and other Day Rate Workers for overtime worked, making Plaintiffs and all Putative Class Members under the day-rate plan similarly situated. The Department of Labor regulations concerning day-rate plans require employers pay day-rate employees for overtime worked. 29 C.F.R. § 778.112. The regulation states:

> If the employee is paid a flat sum for a day's work or for doing a particular job, without regard to the number of hours worked in the day or at the job, and if he receives no other form of compensation for services, his regular rate is determined by totaling all the sums received at such day-rates or job rates in the workweek and dividing by the total hours actually worked. **He is then entitled to extra half-time pay at this rate for all hours worked in excess of 40 in the workweek**.

*Id.* (emphasis added). Failure to pay overtime compensation on a day-rate plan for hours worked over forty in a workweek is a violation of the FLSA. *Solis v. Hooglands Nursery, L.L.C.*, 372 F.App'x 528, 529 (5th Cir. 2010). Importantly, this type of violation is a *per se* violation of the FLSA and does not necessarily depend on the job title or job responsibilities of each particular plaintiff, though they are similar in this matter. *Field v. Anadarko Petroleum Corp.,* No. 4:20-CV-00575, 2020 WL 6075633, at *6 (S.D. Tex. Oct. 15, 2020) (conditionally certifying class of all day-rate workers classified as independent contractors, regardless of job position); *Moore v. Maverick Natural Resources, LLC*, No. H-20-591, 2020 WL 6431901, at *2 (S.D. Tex. Oct. 15, 2020) (conditionally certifying class of production specialists, operators, and inspectors paid a day rate without overtime); *Nigh v. Energy Professionals Group, LLC.*, Civ. A. No. 4:18-cv-01103, ECF. No. 26, at *1 (S.D. Tex. Oct. 3, 2018) (Lake, J.) (conditionally certifying class of all day-rate workers classified as independent contractors, regardless of job position); *Hernandez v. Apache Corp.*, No. 4:16-cv-3454 (S.D. Tex. Sept. 8, 2017) (Gilmore, J.) (certifying a class of all oilfield workers who worked for Apache as independent contractors and were paid a day-rate with no overtime); *Tamez v. BHP Billiton Petroleum (Americas), Inc.*, 2015 WL 7075971, at * 3 (W.D. Tex. Oct. 5, 2015) (Pittman, J.) (conditionally certifying class of day-rate workers classified as independent contractors regardless of job position where plaintiffs alleged they were paid a fixed amount per day without regard for the number of hours worked).

6

Plaintiffs have presented sufficient evidence demonstrating that they and the Putative Class Members were subject to the same policy or plan and thus are similarly situated under the "fairly lenient" standard at the notice stage. Plaintiffs and the Day Rate Workers were all compensated on a day-rate basis and did not receive any overtime pay even though they often worked 50 hours or more in a workweek. Ex. 1 at ¶¶ 5, 7, 14, 15; Ex. 2 at ¶¶ 5, 7, 14, 15; Ex. 3 at ¶¶ 5, 7, 14, 15; Ex. 4 at ¶¶ 5, 7, 14, 15. This confirms NES's common policy of not paying day-rate consultants' overtime in direct violation the FLSA.[1] It is this policy that is the basis for Plaintiffs' claims, and its uniform application makes Plaintiffs similarly situated to all other Day Rate Workers, regardless of job title.[2] Indeed, the very fact NES paid a day-rate to individuals working in myriad different positions illustrates that it was commonplace and that these consultants are similarly situated. *Tamez*, 2015 WL 7075971, at *3.

### 3.4 Day Rate Compensation Schemes are Well-Suited for Conditional Certification.

NES will likely argue that the application of the salary basis test requires individualized inquiry into the Day Rate Workers' job duties, making conditional certification inappropriate. Even if the

---

[1] The Fifth Circuit recently held that, where a worker's compensation was contingent on the number of days worked each week, the employer could not rely on the "salary basis" exemptions under the FLSA. *See Hewitt v. Helix Energy Solutions Group, Inc.*, 956 F.3d 341, 344 (5th Cir. 2020).

[2] Courts regularly grant certification based on a common compensation practice. *See, e.g., Nigh v. Energy Professionals Group, LLC.*, Civ. A. No. 4:18-cv-01103, ECF. No. 26, at *1 (S.D. Tex. Oct. 3, 2018) (Lake, J.) (conditionally certifying class of all day-rate workers classified as independent contractors, regardless of job position); *Hernandez v. Apache Corp.*, No. 4:16-cv-3454 (S.D. Tex. Sept. 8, 2017) (Gilmore, J.) (certifying a class of all oilfield workers who worked for Apache as independent contractors and were paid a day-rate with no overtime); *Tamez v. BHP Billiton Petroleum (Americas), Inc.*, 2015 WL 7075971, at * 3 (W.D. Tex. Oct. 5, 2015) (Pittman, J.) (conditionally certifying class of day-rate workers classified as independent contractors regardless of job position); *Wellman v. Grand Isle Shipyard, Inc.*, No. CIV.A. 14-831, 2014 WL 5810529, at *4 (E.D. La. Nov. 7, 2014) ("The alleged 'straight time for overtime' policy constitutes a 'factual nexus which binds the named plaintiffs and the potential class members together.'"); *Bowser v. Duke Energy, et al.*, No. 2:16-cv-00482, Dkt. No. 60 (W.D. Pa. Mar. 30, 2018) (conditionally certifying nationwide class of hourly employees paid straight time for overtime with one plaintiff); *Terry v. Chicago Bridge & Iron Co.*, No. 4:17-cv-00367, DKT No. 108 (S.D. Tex. March 8, 2018) (conditionally certifying class of straight time for overtime workers); *Salinas v. NES PSN Commissioning Servs., Inc.*, Civ. A. No. 2:17-cv-177, Doc. 34, at *11 (S.D. Tex. Dec. 26, 2017) (conditionally certifying class of nationwide oilfield personnel paid straight time for overtime).

Court considered this anticipated exemption argument at this stage (it should not), such argument fails because NES did not pay Plaintiffs or the Day Rate Workers on a "salary basis."

To prevail on this anticipated argument, NES must have paid Plaintiffs and the Day Rate Workers on a "salary basis." *See* 29 C.F.R. § 541.100(a)(1) (executive exemption requires salary basis); 29 C.F.R. § 541.200(a)(1) (administrative exemption requires salary basis); 29 C.F.R. § 541.300(a)(1) (professional exemption requires salary basis); 541.601(b)(1) (highly compensated employee exemption requires salary basis). **But NES did not pay these workers on a salary basis—they were paid a day rate—therefore no exemption defense is available.** The FLSA regulations' definition of "salary basis" establish a general rule that:

> An employee will be considered to be paid on a "salary basis" within the meaning of these regulations if the employee regularly receives each pay period on a weekly, or less frequent basis, a predetermined amount constituting all or part of the employee's compensation, **which amount is not subject to reduction because of variations** in quality or **quantity of the work performed**. [Subject to exemptions] an exempt employee must receive the full salary for any week in which the employee performs any work **without regard to the number of days or hours worked.**

29 C.F.R. § 541.602(a) (emphasis added). The FLSA further requires the employer to **guarantee** a salary of at least $455 ($684 after January 1, 2020) each week irrespective of the number of hours worked. *Id.*; *see also Hewitt v. Helix Energy Sols. Grp., Inc.*, 956 F.3d 341, 342 (5th Cir. Apr. 20, 2020) (holding "an employee who is paid a daily rate **is not paid on a 'salary basis'**" (emphasis added)); *Hughes v. Gulf Interstate Field Servs., Inc.*, 878 F.3d. 183, 191 (6th Cir. 2017) (finding whether a worker receives a "guaranteed" salary "does matter" and the guarantee itself is a prerequisite to any white collar exemption defense).

Here, NES paid Plaintiffs and the Day Rate Workers on a day rate basis. Ex. 1 at ¶¶ 4-5, 7-8, 14-15; Ex. 2 at ¶¶ 4-5, 7-8, 14-15; Ex. 3 at ¶¶ 4-5, 7-8, 14-15; Ex. 4 at ¶¶ 4-5, 7-8, 14-15. NES only paid these workers a day rate on the days they actually worked (i.e., they were not paid for weeks they did not work and could be paid less than $455 for weeks they did not work enough hours to earn

8

$455). *Id.* But the regulation provides salary pay "is not subject to reduction because of variations in the … quantity of the work performed[,]" and "an exempt employee must receive the full salary for any week in which the employee performs any work without regard to the number of days or hours worked." 29 C.F.R. § 541.602(a). Because NES cannot meet its burden with the salary basis test, Plaintiffs and the Day Rate Workers are all non-exempt—regardless of their job duties.

Finally, the anticipated argument—that no two workers are alike, and the Court must undertake an individualized, person-by-person analysis to resolve the case—is undermined by the fact that NES classified its day rate workers as exempt and failed to pay them overtime in one fell swoop, without examining each individual's job duties, pay, or other employment provisions. *See, e.g., Nerland v. Caribou Coffee Co., Inc.*, 564 F. Supp. 2d 1010, 1024 (D. Minn. 2007) ("The Court finds it disingenuous for [defendant], on one hand, to collectively and generally decide that all store managers are exempt from overtime compensation without any individualized inquiry, while on the other hand, claiming the plaintiffs cannot proceed collectively to challenge the exemption."); *Field*, 2020 WL 6075633, at *4 ("When a plaintiff alleges "that the compensation scheme is in [and] of itself a violation of the FLSA[, n]o further factual inquiry is necessary. Accordingly, liability can be determined collectively without limiting the class to a specific job position.") (internal quotation marks omitted).

**4.    JUDICIAL NOTICE IS APPROPRIATE.**

Plaintiffs have attached proposed Notice and Consent forms for approval by the Court. *See* Ex. 10. Plaintiffs also propose a notice schedule in the attached Proposed Order. *See* Proposed Order. The content of the proposed notice is similar to the notice approved by Judge Rosenthal in the *Richardson v. NES Global LLC* matter. *See* Ex. 9.

**4.1    The production of contact information is routine in FLSA collective actions.**

Plaintiffs requests the Court order NES to provide their Counsel with the names, last known home addresses, email addresses, and phone numbers for all the Day Rate Workers. Courts routinely

9

require this information and allow the issuance of notice through the requested conduits.[3] The production of email addresses is particularly important because the Day Rate Workers all work for long periods of time in remote locations that are far away from home, and will eat, sleep, and work at or near the jobsite, making it difficult (or even impossible) to regularly receive mail. *See* Ex. 1, at ¶ 15; Ex. 2, at ¶ 15.

### 4.2 Email and text message notice should be provided to Putative Class Members.

Due to the transitory nature of the Putative Class Members, Alvarez requests the notice be sent via email and text message, as well as via first class mail. Email notice has become an accepted—and even a preferred—form of notice in FLSA collective actions. *See Anadarko*, 2020 WL 6075633, at *6 ("[N[otice by first-class mail, email, and text message is appropriate to ensure potential class members learn about a FLSA lawsuit, especially when, as here, the employees work away from home for long periods of time."); *Dickensheets v. Arc Marine, LLC*, 440 F. Supp. 3d 670, 672 (S.D. Tex. 2020) (approving class notifications via first-class mail, email, and text message); *Wade v. Furmanite America, Inc.*, No. 3:17-cv-00169, 2018 WL 2088011, at *7-8 (S.D. Tex. May 4, 2018); *Rodriguez v. Stage 3 Separation, LLC*, No. 5:14-cv-603-RP, Doc. 57, at *2 (W.D. Tex. Mar. 16, 2015) (citing *Jones v. JGC Dallas LLC*, 2012 WL 6928101, at *5 n.9 (N.D. Tex. Nov. 29, 2012)); *Hester*, 4:18-cv-1078, Doc. 69, at *10-12 (describing email as a "common, and often primary, means of communication for many workers" and allowing notice to be sent via email). Writing specifically about oilfield employees, Courts in this Circuit have explained that "email notification can be particularly beneficial in situations where potential opt-in plaintiffs are away from home for extended periods of time." *Stage 3 Separation*, No.

---

[3] *Beall v. Tyler Technologies, Inc.*, No. Civ. A. 2-08-CV-422, 2009 WL 3064689, at *1 (E.D. Tex. Sept. 23, 2009) (granting class notice via email and compelling the employer to produce all email addresses, both personal and work); *Dyson v. Stuart Petroleum Testers, Inc.*, 308 F.R.D. 510, 517 (W..D. Tex. 2015) (ordering production of names, addresses, email addresses, and phone numbers)*Davis v. Westgate Planet Hollywood Las Vegas, LLC*, No. Civ. A. 2:08-CV-00722-RCJ-PAL, 2009 WL 102735, at * 15 (D. Nev. Jan. 12, 2009) (granting circulation of class notice via both U.S. mail and email)*; see also Hoffmann-LaRoche*, 493 U.S. 165, 170 ("The District Court was correct to permit discovery of the names and addresses ….").

10

5:14-cv-603-RP, Doc. 57, at *2. Therein, the court explained that email notice should be the rule in providing class notice:

> [I]n 2015 it should rarely be entertaining arguments about the appropriateness of email notice. Email is not the wave of the future; email is the wave of the last decade and a half. Many people use their email address as their primary point of contact, and in almost every situation, more opt-in plaintiffs will be on notice of a pending collective action if the potential class members are also notified via email.

*Id.* In fact, courts routinely order email notice because "notice by e-mail will more likely reach potential class members than regular mail sent to the home address …" and because it is "appropriate and necessary … because [it is] intended to further the broad remedial purposes of the FLSA by providing notice to employees whose work undisputedly requires them to travel to oilfields and stay away from home for days at a time." *Jones*, 149 F. Supp. 3d at 776; Wade, 2018 WL 2088011, at *7-8; *Jaso v. Bulldog Conn. Specialists LLC*, No. 2:15-cv-269, Doc. 17, at *12 (S.D. Tex. Oct. 15, 2015); *Benzon v. National Oilwell Varco, L.P.*, No. 4:14-cv-02582, Doc. 33 (S.D. Tex. June 18, 2015) (allowing notice via email).

### 4.3 Plaintiffs' Counsel should be allowed to follow-up with select class members by phone.

Plaintiffs request that the certification schedule in this matter accommodate the follow-up of Putative Class Members by telephone if they are former employees or if the mailed or emailed Notice and Consent Forms are undeliverable. Employees who have left the employment of a company frequently do not provide that former employer with up-to-date contact information. *See Tillis v. Glob. Fixture Servs., Inc.*, No. 4:19-CV-01059, 2020 WL 1443490, at *6 (S.D. Tex. Mar. 23, 2020); *Gandhi v. Dell, Inc.*, No. 1:08-CV-248-JRN, 2009 WL 3427218, at *2 (W.D. Tex. Oct. 20, 2009) (internal quotation marks and citation omitted); *Lopez v. WS Energy Svcs., LLC*, No. 2:15-cv-135, Doc. 33, at *3 (S.D. Tex. Oct. 15, 2015) (Libby, M.J.). As courts have noted, "telephone numbers … provide a more stable means of contacting a person who has moved than a mailing address." *Jaso,* No. 2:15-cv-269, Doc. 17 (citing *Dyson*, 308 F.R.D. at 516-17).

11

**5. CONCLUSION**

Plaintiffs have met their burden of providing "substantial allegations" to support their claims that they and other individuals receiving a day-rate are similarly situated and that conditional certification and court-authorized notice is warranted. As such, Plaintiffs' motion should be granted.

Date:   November 13, 2020

Respectfully submitted,

By: /s/ *Carl A. Fitz*
    **Michael A. Josephson**
    Texas Bar No. 24014780
    Fed. ID No. 27157
    **Andrew W. Dunlap**
    Texas Bar No. 24078444
    Fed. ID No. 1093163
    **Carl A. Fitz**
    Texas Bar No. 24105863
    Fed. ID No. 3158237
    **JOSEPHSON DUNLAP, LLP**
    11 Greenway Plaza, Suite 3050
    Houston, Texas 77005
    713-352-1100 – Telephone
    713-352-3300 – Facsimile
    mjosephson@mybackwages.com
    adunlap@mybackwages.com
    cfitz@mybackwages.com

    **AND**

    **Richard J. (Rex) Burch**
    Texas Bar No. 24001807
    Fed. Id. 21615
    **BRUCKNER BURCH PLLC**
    8 Greenway Plaza, Suite 1500
    Houston, Texas 77046
    Tel: (713) 877-8788
    Fax: (713) 877-8065
    rburch@brucknerburch.com

    **ATTORNEYS FOR PLAINTIFF**

**CERTIFICATE OF SERVICE**

On November 13, 2020, I served a copy of this document on all registered parties and/or their counsel of record via the Court's CM/ECF system.

/s/ *Carl A. Fitz*
Carl A. Fitz

**CERTIFICATE OF CONFERENCE**

I conferred with Joseph Buller, Defendant's counsel, telephonically regarding the relief presently requested on November 3, 2020, and again on November 5, 2020 via e-mail. On November 5, 2020, I provided Ashlee Grant and Joseph Buller with a proposed stipulation to conditional certification. To date, neither Ms. Grant nor Mr. Buller have responded to the proposal, necessitating the filing of this motion.

/s/ *Carl A. Fitz*
Carl A. Fitz