United States District Court
Southern District of Texas
**ENTERED**
August 12, 2021
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| LOYDA ALVAREZ, § | |
| § | |
| Plaintiff, § | |
| VS. § | CIVIL ACTION NO. 4:20-CV-1933 |
| § | |
| NES GLOBAL LLC, § | |
| § | |
| Defendant. § | |

### ORDER GRANTING PLAINTIFF'S MOTION FOR CERTIFICATION

Pending before this Court is Plaintiff Alvarez's Motion for Certification under FLSA. (Doc. 18.) After considering the applicable law, and upon written and oral argument of the parties, the Court finds that the motion should be **GRANTED** for the following reasons.

**I.     BACKGROUND**

**A.     Alleged Facts and Proposed Collective**

Plaintiff Loyda Alvarez filed this lawsuit to recover unpaid overtime wages and other damages from Defendant NES Global LLC ("NES") under the Fair Labor Standards Act and New Mexico Minimum Wage Act. She alleges the following. NES is a staffing company that provides recruitment services primarily to the oil and gas industry. (Doc. 1, Complaint, ¶ 33.) NES pays many of its employees based on a day rate basis without overtime (such employees are referred to in the Complaint as the "Day Rate Workers"). (¶ 36.) Although NES characterizes this compensation scheme as a salary, Alvarez contends that it cannot be, as pay is calculated on a daily, rather than weekly, rate. (¶ 42.)

1

Alvarez worked at NES as a Project Scheduler from September 2019 to April 2020 and was paid according to this day rate scheme. (¶¶ 11–12.) She—and other Day Rate Workers—typically worked 7 days a week, sometimes for 10 or more hours a day, but did not receive overtime. (¶ 48.) For example, Alvarez alleges that in January 2020, she worked 29 consecutive days but was paid a flat daily rate, regardless of the number of hours she worked. (¶ 49.)

Alvarez brings this action on behalf of herself and other similarly situated workers who were paid under the day-rate system. The proposed collective is defined as: "All individuals employed by or working on behalf of [NES] and paid according to its day right pay plan in the past three years." (¶¶ 15, 17.)

### B.     Current Opt-in Plaintiffs and Discovery to Date

In addition to Plaintiff Alvarez, two other individuals—Jeremy Hippler and Ian Magee—have filed consents to join this action, and another individual—Adalberto Rodriguez—has provided an affidavit with information about his pay and employment with NES Global. Their compensation was structured as follows. First, each individual was paid a "retainer" in any workweek in which he or she performed any work. Then, the individual was paid a day (or hourly) rate in any workweek that he or she performed more than a certain number of days or hours of work. So, for example:

- Alvarez was paid $1,120 in any workweek in which she performed any work, and an additional $560/day in any workweek in which she worked more than 2 days.

- Rodriguez was paid $1,600 in any workweek in which he performed any work, and an additional $800/day in any workweek in which he worked more than 2 days.

- Magee was paid $1,450 in any workweek in which he performed any work, and an additional $1,450/day in any workweek in which he worked more than 1 day.

- Hippler was paid $700.02 in any workweek in which he performed any work, and an additional $116.67/hour in any workweek in which he worked more than 6 hours.[1]

This seemingly confusing pay structure is in fact quite simple: while the "retainer" is styled as a base weekly compensation (i.e., what NES characterizes as a weekly salary), it is simply the daily or hourly rate for the exact period of time before the daily or hourly rate kicks in. In other words, the only time the retainer affects any of these employees' compensation is if the individual were to perform work on more than 0 days but for less than the amount of time in which the day or hourly rate kicks in. Plaintiff alleges that this scenario occurs rarely, if ever, because the employees have all provided affidavits indicating that they regularly worked in excess of 50 hours a week.

Finally, the job duties of these four individuals varied significantly. Alvarez was a Planning and Scheduling Lead assigned to an energy company in Midland. Rodriguez was a Health/Safety/Environment Lead assigned to ExxonMobil in Beaumont. Hippler was a Drilling Supervisor working in Permian. And Magee was a Hook-Up Manager at an energy company in Houston. All have submitted affidavits indicating that they regularly worked more than 40 hours a week, were paid according to a daily rate (regardless of how many hours they worked), did not

---

[1] At oral argument, counsel for Plaintiff represented that, although Hippler's contract specifies an hourly rate, his timecards indicate that he was paid for 12 hours a day every day, regardless of how much he worked, and he was therefore effectively paid a day rate like the other members of the proposed collective.

3

receive overtime, and never received guaranteed compensation for the weeks or days they did not work. (Docs. 18-1 through 18-4.)

## II. MOTION TO CERTIFY

### A. Legal Standard

A district court's decision to certify a FLSA collective is governed by the Fifth Circuit's recent opinion, *Swales v. KLLM Transport Services, LLC*, 985 F.3d 430 (5th Cir. 2021). That decision discarded the long-used *Lusardi* two-step approach in which a district court would first consider the issue of whether a collective should be conditionally certified, followed by a notice and opt-in period, followed by a decertification stage.

In lieu of this old approach, *Swales* instructs that "a district court must rigorously scrutinize the realm of 'similarly situated' workers, and must do so from the outset of the case, not after a lenient, step-one 'conditional certification.' Only then can the district court determine whether the requested opt-in notice will go to those who are actually similar to the named plaintiffs." *Id.* at 434. In other words, the district court proceeds directly to step two of *Lusardi*—the "similarly situated" inquiry—with the benefit of pre-certification discovery if needed.

"While [the similarly situated] inquiry does not mean that the class members must be identically situated, it does mean that the Plaintiff must show a 'demonstrated similarity' among the purported class members, as well as a 'factual nexus' that binds the class members' claims together such that hearing the claims in one proceeding is fair to all parties and does not result in an unimaginable trial of individualized inquiries." *Cotton-Thomas v. Volvo Grp. N. Am., LLC*, No. 3:20-CV-113, 2021 WL 2125003, at *2 (N.D. Miss. May 25, 2021) (citing *Swales*, 985 F.3d at 443). "In general, in order to determine if purported class members are sufficiently similarly

situated, courts consider (1) the factual and employment settings of the purported class members; (2) the various defenses available to the defendant and if any defenses are individualized rather than applying to the class as a whole; and (3) fairness and procedural considerations." *Id.* (citing *Swales*, 985 F.3d at 437).

## B. Discussion

The proposed collective in this case is defined as: "All individuals employed by or working on behalf of NES Global, LLC who were paid a day rate with no overtime in the past three years." Alvarez contends that the FLSA violations at issue turn on a common pay practice that NES used for all members of the proposed collective, who are therefore similarly situated to one another. In response, NES argues that the proposed collective is not similarly situated because (1) the pay practices differ significantly between members, and (2) whether the class members are entitled to overtime depends on their job duties and job locations. These purported differences among the class members matter, NES argues, because its primary defense is that these employees are "highly compensated individuals" and are therefore exempt from FLSA's overtime requirements. This exemption involves the interaction of several FLSA statutory provisions and regulations, to which the Court now turns.

Plaintiff's core legal claim is that this compensation scheme violates the FLSA requirement that employers pay 50 percent overtime for any time worked over 40 hours per week. *See* 29 U.S.C. § 207(a).

However, FLSA's overtime requirements apply only to non-exempt employees. Relevant here, individuals who work in a "bona fide executive, administrative or professional capacity" are exempt. 29 U.S.C. § 213(a)(1). Department of Labor regulations further define as exempt a

category of "highly compensated employees" who perform at least one of the "duties or responsibilities of an executive, administrative, or professional employee." 29 C.F.R. § 541.601. The highly compensated employee exemption requires that the employee be paid a minimum amount (at least $684 per week) on a "salary . . . basis," as set forth in § 541.602. *Id.*

Generally, in order to meet the salary basis test, an employee must be paid "each pay period on a weekly, or less frequent basis, a predetermined amount constituting all or part of the employee's compensation, which amount is not subject to reduction because of variations in the quality or quantity of the work performed." 29 C.F.R. § 541.602(a). Further, "an exempt employee must receive the full salary for any week in which the employee performs any work without regard to the number of days or hours worked." *Id.* § 541.602(a)(1).

Here, of course, the workers were paid with regard to the number of days or hours worked, and therefore a second regulation applies. *See* 29 C.F.R. § 541.604(b)(2). Under that regulation, a daily or hourly rate employee is still considered to be paid on a salary basis (and is therefore exempt from FLSA's overtime requirement) if: (1) "the employment arrangement also includes a guarantee of at least the minimum weekly required amount paid on a salary basis regardless of the number of hours, days or shifts worked," and (2) "a reasonable relationship exists between the guaranteed amount and the amount actually earned." *Id.* "The reasonable relationship test will be met if the weekly guarantee is roughly equivalent to the employee's usual earnings at the assigned hourly, daily or shift rate for the employee's normal scheduled workweek." *Id.* The regulations provide an example: "an exempt employee guaranteed compensation of at least $725 for any week in which the employee performs any work, and who normally works four or five shifts each week, may be paid $210 per shift without violating the $684–per-week salary basis requirement." *Id.* In

essence, the reasonable relationship test ensures that the weekly guarantee is close to what an employee would make based on a daily rate if the employee worked a normal amount of time during the week. What matters is whether the guaranteed weekly minimum accurately reflects the individual's "salary," regardless of additional compensation the individual may earn from a daily or hourly rate.

As mentioned, one of NES's primary defenses in this case will be that "Plaintiff and each potential class member satisfied . . . the highly compensated employee exemption." (Doc. 39 at 12.) Based on the regulations cited above, NES will need to show that the plaintiffs:

(a) were paid according to a salary basis,[2] which in turn will require (i) a showing that the employment arrangement included a guarantee of a minimum weekly required amount, and (ii) that the minimum amount bears a reasonable relationship to the

---

[2] The Court acknowledges that whether or not the "reasonable relationship test" applies to the highly compensated executive function (if that employee is paid according to a daily rate) is an unsettled question in the Fifth Circuit. A panel opinion recently held that it does, but that opinion was vacated, and the issue is now before the *en banc* court. *See Hewitt v. Helix Energy Sols. Grp., Inc.*, 983 F.3d 789, 791–92 (5th Cir. 2020), *reh'g en banc granted, opinion vacated*, 989 F.3d 418 (5th Cir. 2021). Looking to other circuits, the Court observes that the Sixth Circuit has answered this question in the affirmative. *See Hughes v. Gulf Interstate Field Servs., Inc.*, 878 F.3d 183 (6th Cir. 2017). In contrast, the First and Second Circuits have held that the reasonable relationship test does not apply to the highly compensated executive function, although in both cases, the employees made a guaranteed minimum salary regardless of whether they billed any hours or not, so there are grounds to distinguish both of those cases from this case, as the now-vacated *Hewitt* majority opinion attempted to do. *See Litz v. Saint Consulting Grp., Inc.*, 772 F.3d 1 (1st Cir. 2014); *Anani v. CVS RX Servs., Inc.*, 730 F.3d 146 (2nd Cir. 2013); *Hewitt*, 983 F.3d at 796 & n.2 ("We agree with the Sixth Circuit: There is no split. Moreover, if there is a split, it's one that has existed since 2017, when the Sixth Circuit decided *Hughes*. What's more, . . . since *Hughes*, no circuit has seen fit to join the First and Second Circuits in this alleged split. Quite the opposite, in fact: Just this year, both the Eighth Circuit and the Labor Department sided with the Sixth Circuit (and with our circuit) over *Litz* and *Anani*."), *reh'g en banc granted, opinion vacated*, 989 F.3d 418. In light of the absence of binding authority from the Fifth Circuit, the Court finds the recent approach taken by the Sixth Circuit to be persuasive and adopts the view that the reasonable relationship test applies here.

>   amount actually earned, and
>
> (b) performed at least one of the duties of an executive, administrative, or professional employee.

As to the first element, the Court concludes that the general structure of the pay scheme as evidenced by these four individuals (i.e., the base retainer plus the daily rate) is similar enough for the Court to decide, collectively, whether the employees were paid according to a salary basis. While plaintiffs were not paid the exact same salary or according to an identical scheme, they are not required to meet such a high burden; rather, it is sufficient to show that the general structure was the same and will raise the same legal issues under FLSA—here, whether they were paid according to a salary basis. That question can be answered collectively and will not require the kind of "individualized inquiries" that defeat FLSA certification.

To be sure, the Court finds it less plausible that prong (b)—whether or not the members of the proposed collective performed one of the duties of an executive, administrative, or professional employee—can be answered collectively, given the wide range of jobs performed by even just the four individuals here (Alvarez, Rodriguez, Magee, and Hippler). But if Plaintiffs are able to show that the employees fail the salary basis test, the collective can proceed without the need for considering the duties element, as Defendants, in order to invoke the "highly compensated employee" defense, bear the burden of demonstrating that *both* the salary basis element is met *and* the duties element is met. If, however, the employees do meet the salary basis test, the Court could reconsider at that time whether the members of the collective are still "similarly situated."[3]

---

[3] At oral argument, counsel for Defendant argued that this approach is equivalent to resorting to the *Lusardi* two-step approach of conditional certification and decertification, but the Court sees the matter differently. The Court is rigorously applying the "similarly situated" standard at the

Because the salary basis test component of NES's "highly compensated employee" defense can be decided collectively, the Court finds that the members of Plaintiff's proposed collective are "similarly situated" within the meaning of FLSA, and the collective is hereby certified.

### III. NOTICE

The second issue is the form and method that Court-ordered notice to members of the proposed collective should take. Plaintiffs have submitted a proposed notice form (Doc. 18-10) as well as the following notice method and timeline:

- 10 days from certification: Defendant discloses names, addresses, e-mail addresses, and phone numbers.

- 20 days from certification: Plaintiff sends notice by mail, e-mail, and text message.

- 30 days from mailing: Plaintiff sends follow-up notice by mail, e-mail. Plaintiff counsel may call class members to ensure forms were received.

- 60 days from mailing: Deadline to return consent forms.

NES initially objected to both the content and method of notice, but the parties have resolved their disagreement as to the content of the notice form. (Doc. 24 at 7.) The Court approves the content of the proposed notice, with Defendant's proposed change.

Thus, the only disagreement is over the method of notice. Defendant objects to text messages and phone calls as intrusive, unnecessary, and out of step with regularly approved methods of contacting members of a collective. Plaintiff argues that text messages and phone calls are one of the primary modes of modern communication, one of the most reliable ways to contact

---

initial stage, with the understanding that later developments in the case, pertaining to the merits of NES's defense (about which the Court expresses no view at the moment), may make relevant individual differences among the members of the proposed collective that are not relevant now.

individuals, and not materially more intrusive than mail or e-mail.

"District courts across the country are split as to whether a plaintiff should be permitted to send notice to potential class members in FLSA actions by text message in addition to other more traditional notice methods." *Dickensheets v. Arc Marine, LLC*, 440 F. Supp. 3d 670, 671 (S.D. Tex. 2020) (collecting cases). The same is true of phone calls. Compare *Pierce v. Apache Corp.*, No. 4:18-cv-1803, 2019 WL 338129, at *4 (S.D. Tex. Jan. 28, 2019) (approving notice by mail and email but declining phone numbers for follow-up calls) *with M.A. by Ashear v. NRA Grp., LLC*, No. 17-cv-7483, 2019 WL 2357767, at *2 (E.D.N.Y. June 4, 2019) (noting that our "primary methods of communication have evolved" to include "text messages and phone calls to cellular telephones"). In *Dickensheets*, the judge allowed text message notice on the basis that text messaging has become a dominant and sometimes primary means of communication in modern society, and in order to further the "overarching goal of providing potential class members the opportunity to join the case." 440 F. Supp. 3d at 672.

The Court finds the reasoning in *Dickensheets* persuasive and concludes that the overall purpose of informing class members would be best served by the various methods of notice proposed by Plaintiff, including text messages and phone calls.

\*      \*      \*

For the above reasons, Plaintiff's Motion for Certification (Doc. 18) is **GRANTED**. Court-ordered notice to members of the proposed collective may issue according to the timeline and methods proposed by Plaintiff. The content of the notice should take the form agreed upon by the parties.

**IT IS SO ORDERED.**

**SIGNED** at Houston, Texas, on August 11, 2021.

_____
KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE