United States District Court
Southern District of Texas
**ENTERED**
December 29, 2023
Nathan Ochsner, Clerk

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| LOYDA ALVAREZ, individually and on behalf of all others similarly situated, | § § § | |
| *Plaintiffs*, | § | |
| VS. | § | CIVIL ACTION NO. 4:20-cv-01933 |
| | § | |
| NES GLOBAL LLC, | § § | |
| *Defendant*. | § | |

## <u>MEMORANDUM & ORDER</u>

Before the Court are two motions: first, Plaintiffs' Motion for Partial Summary Judgment (ECF No. 109), Defendant's Response (ECF No. 122), and Plaintiff's Reply (ECF No. 125); second, Defendant's Motion for Summary Judgment (ECF No. 110), Plaintiffs' Response (ECF No. 123), and Defendant's Reply (ECF No. 126).

Having reviewed the parties' arguments and applicable law, the Court **GRANTS** Plaintiffs' Motion for Partial Summary Judgment (ECF No. 109) and **GRANTS IN PART AND DENIES IN PART** Defendant's Motion for Summary Judgment (ECF No. 110).

### I.    BACKGROUND

In June 2020, Plaintiff Loyda Alvarez, individually and behalf on all others similarly situated, filed the present action against a staffing company, Defendant NES Global LLC ("NES" or "Defendant"), seeking unpaid overtime and damages pay pursuant to the Fair Labor Standards Act of 1938, 29 U.S.C. §§ 201-219 (the "FLSA") and the New Mexico Minimum Wage Act (the "NMMWA").

Plaintiff Alvarez alleges that Defendant paid her and other similarly situated employees according to a day rate with no overtime compensation for hours worked in excess of 40 hours in

a workweek. The Court granted Plaintiff's Motion for Certification in August 2021. *Alvarez v. NES Glob. LLC*, No. 4:20-CV-1933, 2021 WL 3571223 (S.D. Tex. Aug. 11, 2021), *reconsideration denied*, No. 4:20-CV-01933, 2021 WL 4593985 (S.D. Tex. Oct. 6, 2021). The collective is defined as: all individuals employed by or working on behalf of Defendant who were paid a day rate with no overtime compensation in the past three years. *Id.* at *1.

In total, 85 individuals filed Notices of Consent to join the collective who have not subsequently filed a Withdrawal of Consent (together with Alvarez, collectively "Plaintiffs"). *See* ECF Nos. 1-2, 11, 65–74 (Notices of Consent); ECF Nos. 95–96, 99, 101 (Notices of Withdrawal); ECF No. 111, Ex. 1 (listing the identities of each Plaintiff along with a summary of their job titles, client assignments, work locations, and compensation amounts).

Defendant now moves for summary judgment, arguing that the evidence establishes that it properly classified Plaintiffs as exempt from overtime requirements and that it acted in good faith and with reasonable grounds in implementing and executing the compensation structure at issue. Defendant also asserts that Plaintiffs have not met their burden to show that Defendant acted willfully, nor their prima facie burden to show that they performed work for which they were not properly compensated. Plaintiffs move for partial summary judgment as to Defendant's exemption defenses, arguing that they are not exempt from overtime payments because Defendant does not pay them on a salary basis.

## II.    SUMMARY JUDGMENT STANDARD

Summary judgment is proper when there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A genuine issue of material fact exists if a reasonable jury could enter a verdict for the non-moving party. *Crawford v. Formosa Plastics Corp.*, 234 F.3d 899, 902 (5th Cir. 2000). The court can consider any evidence

in "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The Court must view all evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Crawford*, 234 F.3d at 902.

The party moving for summary judgment bears the burden of demonstrating the absence of a genuine dispute of material fact. *Kee v. City of Rowlett*, 247 F.3d 206, 210 (5th Cir. 2001). If the moving party meets this burden, the non-moving party must go beyond the pleadings to find specific facts showing that a genuine issue of material fact exists for trial. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). Summary judgment is appropriate if a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex*, 477 U.S. at 322.

### III.   ANALYSIS

#### A.   The FLSA, its exemptions, and the salary-basis test

The FLSA guarantees that covered employees receive time-and-a-half pay for all hours worked in excess of 40 hours per week. *See* 29 U.S.C. § 207(a). However, certain categories of workers are exempted from the FLSA's protections, including the overtime pay requirements. When an exemption is claimed, it is the employer who "bears the burden of proving that an employee is ineligible for overtime or minimum-wage compensation." *Meza v. Intelligent Mexican Mktg., Inc.*, 720 F.3d 577, 580 (5th Cir. 2013). "The employer must prove facts by a preponderance of the evidence that show the exemption is 'plainly and unmistakably' applicable." *Id.* at 581 (quoting *Arnold v. Ben Kanowsky, Inc.*, 361 U.S. 388, 392 (1960)).

The exemption relevant to this case applies to "any employee employed in a bona fide executive, administrative, or professional capacity." 29 U.S.C. § 213(a)(1). The Secretary of Labor

has laid out three distinct criteria which must be satisfied under this provision, known as the bona fide executive exemption. *Helix Energy Sols. Grp., Inc. v. Hewitt*, 598 U.S. 39, 45 (2023) (hereinafter "*Hewitt*"). The first is the "salary basis" test, the basic idea of which is that "an employee can be a bona fide executive only if he receives a 'predetermined and fixed salary'— one that does not vary with the precise amount of time he works." *Id.* "The second element is the 'salary level' test: It asks whether that preset salary exceeds a specified amount. And the third is the 'duties' test, which focuses on the nature of the employee's job responsibilities." *Id.*

The bona fide executive exemption has been implemented through "two separate and slightly different rules, one applying to lower-income employees and the other to higher-income ones." *Id.* The "general" rule pertains to employees who carry out three specified duties, are compensated on a salary basis at a rate of not less than $684 per week, and earn *less* than $107,432 in total annual compensation.[1] *See* 29 C.F.R. § 541.100. The second rule, known as the highly compensated employee rule (the "HCE rule"), has the same salary-level and salary-basis components as the general rule, but applies to employees making $107,432 or more per year and amends the duties test by making it "easier to satisfy." *Hewitt*, 598 U.S. at 45; *see also* 29 C.F.R. § 541.601.

The case turns on whether Defendant's pay policy passes the salary-basis test, one of the three required elements of the bona fide executive exemption. The Department of Labor's ("DOL") regulations provide two "non-overlapping paths to satisfy the salary-basis requirement"— 29 C.F.R. § 541.602(a) ("§ 602(a)") and § 541.604(b) ("§ 604(b)"). *Hewitt*, 598 U.S. at 56. Both paths apply to the general rule and HCE rule alike. *Id*. at 58. § 602(a), which sets

---

[1] Effective January 1, 2020, the DOL increased the minimum weekly salary for bona fide executives from $455 to $684 and the annual compensation threshold for highly compensated employees from $100,000 to $107,432.

forth the "main salary-basis provision," *id.* at 46, states:

> An employee will be considered to be paid on a "salary basis" . . . if the employee regularly receives each pay period on a weekly, or less frequent basis, a predetermined amount constituting all or part of the employee's compensation, which amount is not subject to reduction because of variations in the quality or quantity of the work performed. Subject to [certain exceptions], an exempt employee must receive the full salary for any week in which the employee performs any work without regard to the number of days or hours worked. Exempt employees need not be paid for any workweek in which they perform no work.

29 C.F.R. § 541.602(a).

This provision "ensures that the employee will get at least part of his compensation through a preset weekly (or less frequent) salary, not subject to reduction because of exactly how many days he worked." *Hewitt*, 598 U.S. at 46.

Notably, an employer does not lose the exemption or violate the salary basis requirement "if an exempt employee who is guaranteed at least $684 each week paid on a salary basis also receives additional compensation based on hours worked for work beyond the normal workweek." 29 C.F.R. § 541.604(a) ("§ 604(a)"). The "additional compensation" provided beyond the minimum guarantee "may be paid on any basis (e.g., flat sum, bonus payment, straight-time hourly amount, time and one-half or any other basis)." *Id.*

§ 604(b) is the second path enabling a compensation scheme to meet the salary-basis requirement. As the Supreme Court explained, "§ 604(b) tak[es] over where § 602(a) leaves off." *Hewitt*, 598 U.S. at 56. Whereas § 602(a) addresses payments made on a weekly or less frequent basis, § 604(b) "focuses on workers whose compensation is 'computed on an hourly, a daily or a shift basis.'" *Id.* at 39 (quoting § 604(b)). § 604(b) provides that an employee whose pay is based on an hourly, daily, or shift rate may still qualify as a bona fide executive as long as two conditions are met:

First, the employer must "also" guarantee the employee at least [$684] each week (the

minimum salary level) "regardless of the number of hours, days or shifts worked." And second, that promised amount must bear a "reasonable relationship" to the "amount actually earned" in a typical week—more specifically, must be "roughly equivalent to the employee's usual earnings at the assigned hourly, daily or shift rate for the employee's normal scheduled workweek."

*Id.* at 47 (quoting 29 C.F.R. § 541.601(b)(1)) (internal citations omitted). § 604(b) reinforces the exclusion of daily, hourly, and shift rates from § 602(a)'s domain and speaks to when those shorter rates count as a "salary." *Id.* at 56.

### B.  Defendant's compensation structure

Defendant refers to its contract employees assigned to provide services to Defendant's clients on a temporary or project basis as "Candidates." Prior to December 2016, Defendant paid its Candidates "a straight hourly or day rate for all hours worked each workweek." ECF No. 110 at 4. However, in 2016, the DOL conducted an audit of Defendant's pay practices, found that Candidates paid a straight hourly rate or a day rate less than $455 were misclassified as exempt, and determined that Defendant owed these Candidates approximately $2.1 million in unpaid overtime. *See id.* at 5 n.4.

As part of its settlement with DOL, Defendant implemented a FLSA Questionnaire used to determine if each Candidate's position satisfies at least one of the FLSA duties tests as well as a new compensation structure intended to comply with the FLSA. *Id.* at 5. Parties dispute the language used to describe Defendant's present-day compensation structure. However, the basic scheme is as follows: Defendant guaranteed Candidates a weekly amount of pay (which it calls a "Retainer") for any workweek in which they performed *any* work, plus additional compensation for all days (or hours) worked in excess of those that made up the Retainer. "The Retainer is calculated by multiplying the day (or hourly) rate times the number of days (or hours) covered by the Retainer ('Retainer Period')." ECF No. 109 at ¶ 5; *see also* ECF No. 122 at 18 (explaining that

"NES initially derived Plaintiffs' guaranteed salary by using a formula based on their day rate to ensure that everyone is paid above that guaranteed salary requirement of $455/$684 under the DOL regulations"). The Retainer Period ranged from one to three days for day-rate employees and from five to 20 hours for hourly employees, with most employees working typically at least five days a week. ECF No. 109 at ¶ 7, 8.

By way of a representative example, Plaintiff Alvarez's Contract Offer Letter states that she was classified as exempt from the FLSA, was paid a day rate of $560, and had a two-day Retainer Period. ECF No. 111, Ex. 11-A. This means she was not eligible for overtime pay but was entitled to $1,120 for any week in which she performed any work, plus an additional $560 per day for any week in which she worked more than two days. *Id.* As a hypothetical, if Plaintiff Alvarez worked six days in a given week, her total pay for the week would be $3,360.

Plaintiffs contend that the Retainer was illusionary because it was not actually "guaranteed." As they explain, "Plaintiffs worked less than their Retainer Period on 19 occasions within the three-year limitations period. Of those, NES failed to pay the Retainer every single time except once." ECF No. 109 at ¶ 13; *see also* ECF 109-1, Ex. 27 Afhami Decl. at ¶ 7; ECF No. 109-1, Ex. 27-A FRE 1006 Retainer Summary. Plaintiffs add that each employee's Retainer was entered into the payroll system manually until May 2023, when Defendant "hard-coded" the Retainer into the background of its system. ECF No. 109 at ¶ 13. Defendant does not dispute the assertion that there were several instances in which it failed to pay Plaintiffs their full Retainer when they worked less than the portion of the week covered by their Retainer Period. Rather, Defendant argues that "[t]he twenty-four total instances where twelve Plaintiffs did not receive their Retainers in only a few workweeks does not establish that NES had an actual practice of improper deductions." ECF No. 122 at 32. The Court notes that the parties do not clearly explain

the difference in their tabulations.

**C. Whether Plaintiffs were compensated on a salary basis and, therefore, properly classified as exempt from the FLSA's overtime provisions**

**i. Whether § 602(a) or § 604(b) applies to the present case**

Defendant claims that Plaintiffs were exempt from FLSA's overtime requirements pursuant to the HCE rule. ECF 110 at 2. Defendant bears the burden of establishing that the salary-level, salary-basis, and job duties requirements of this exemption have been met. Regarding the job duties requirement, when certifying this collective action, the Court was not fully persuaded that the question of "whether or not the members of the proposed collective performed one of the duties of an executive, administrative, or professional employee" could be answered collectively. *Alvarez*, 2021 WL 3571223, at *4. Regardless, the Court found that the members of the proposed collective were similarly situated within the meaning of the FLSA because the salary-basis test component of Defendant's exemption defense *could* be decided collectively:

> [I]f Plaintiffs are able to show that the employees fail the salary basis test, the collective can proceed without the need for considering the duties element, as Defendants, in order to invoke the "highly compensated employee" defense, bear the burden of demonstrating that both the salary basis element is met and the duties element is met. If, however, the employees do meet the salary basis test, the Court could reconsider at that time whether the members of the collective are still "similarly situated."

*Id.* Following this plan, the Court will determine whether Defendant's pay scheme passes the salary-basis test under either § 602(a) or § 604(b). If the salary-basis test is met, then only will the Court consider whether the other elements of the exemption are also satisfied.

Defendant contends that its Retainer meets the salary-basis test under § 602(a) because it constitutes a guaranteed weekly base salary, paid without regard to the number of hours or days worked. ECF No. 110 at 12-14. Plaintiffs reject this, arguing that "[u]nder the Retainer Policy, Plaintiffs would receive the Retainer only in those rare instances where they worked less than the

Retainer Period. In reality, NES paid Plaintiffs the number of days, or hours, worked multiplied by their applicable rate. Accordingly, Plaintiffs are not 'weekly-rate-only' employees under § 602(a)." ECF No. 109 at 14 (internal citations removed); *see also* ECF No. 123 at 22 (internal citations removed) (quoting *Hewitt*, 598 U.S. at 54, 57) ("[Defendant's] Retainer is expressly calculated based on a period that is more frequent than weekly, not 'less frequent' than weekly as 602(a) 'demands.' Thus, NES's Retainer Policy does not pay based on a 'weekly rate,' much less 'weekly-rate-only.'")

Additionally, Defendant's compensation structure does not consist of solely a Retainer (which, again, Defendant considers a base salary within the meaning of § 602(a)). As described above, Plaintiffs received additional compensation for days or hours worked beyond their Retainer Period. Defendant argues that, per § 604(a), this "hybrid" structure does not forfeit an employee's exempt status or violate the salary basis requirement. According to Defendant, its "compensation structure unmistakably falls within [§ 604(a)]: it provided 'a guarantee of at least the minimum weekly-required amount [of $455/$684] paid on a salary basis'—Plaintiffs' predetermined weekly salaries ranging from $675 to $2,250—and therefore was permitted to provide 'additional compensation without losing the exemption or violating the salary basis requirement.'" ECF No. 122 at 27 (quoting § 604(a)).

Plaintiffs, however, contend that § 604(a) is inapplicable because the provision makes "it clear 'additional compensation based on hours worked' must be paid for time worked '**beyond the normal workweek**.'" ECF No. 109 at 15 (quoting § 604(a) (emphasis in original)). "In other words," according to Plaintiffs, "§ 604(a) addresses the situation where the employee is, in fact, paid a salary on a 'weekly basis' (i.e., a 'salary' covering a full week's pay)." *Id.* Plaintiffs maintain that because Defendant's Retainer does not cover a "normal workweek" and is derived from a day

rate (or hourly rate), it cannot satisfy § 604(a), leaving § 604(b) as the only pathway by which Defendant can meet the salary-basis test. *Id.* at 15-16.

Another court in this district, faced with a similar factual scenario, came to the same conclusion as Plaintiffs. *Gentry v. Hamilton-Ryker IT Sols., LLC*, No. 3:19-CV-00320, 2022 WL 658768 (S.D. Tex. Mar. 4, 2022), *report and recommendation adopted*, No. 3:19-CV-00320, 2022 WL 889276 (S.D. Tex. Mar. 25, 2022), *aff'd sub nom. Gentry v. Hamilton-Ryker IT Sols., L.L.C.*, No. 22-40219, 2023 WL 4704115 (5th Cir. July 24, 2023). In *Gentry*, plaintiffs were paid a "guaranteed weekly salary equal to 8 hours of pay" for any week that they performed any work, plus their hourly rate "for all hours worked in excess of 8 hours in a work week, including those hours worked over 40 in a particular week." *Id.* at *2. The court found that, to determine whether plaintiffs were exempt from the FLSA overtime requirements, this compensation structure had to be analyzed under § 604(b), not § 604(a). Reasoning from the plain language of the regulations, the court concluded:

> [I]f an employee's additional compensation is computed on an hourly basis, and it is not for additional "work beyond the normal workweek" (as allowed under § 541.604(a)), then the requirements of § 541.604(b) apply. Said another way, if "the guaranteed salary amount was for a normal workweek (i.e., 40 hours)," § 541.604(a) applies, but if "the guaranteed amount was in fact for fewer hours than a normal workweek of forty (40) hours," § 541.604(b) applies.

*Id.* at *5 (quoting *Holladay v. Burch, Oxner, Seale Co., CPA's, PA*, No. CIV.A.407-CV-03804RB, 2009 WL 614783, at *7 (D.S.C. Mar. 6, 2009)). The Fifth Circuit found no reversible error of law or fact in the magistrate judge's report, adopted by the district court as its opinion. *Gentry*, 2023 WL 4704115, at *1.

Defendant uses the Tenth Circuit's decision in *Wilson v. Schlumberger Tech. Corp.*, 80 F.4th 1170 (10th Cir. 2023) to argue against the *Gentry* court's interpretation of § 604(b). In *Wilson*, the Tenth Circuit noted that the phrase "beyond the normal workweek" in § 604(b) was

used as an "example[] of when additional compensation may be paid without an employee losing the overtime exemption"—the court found that it "does not, by its plain language, exclude other compensation schemes where additional compensation is calculated hourly but not beyond the 40-hour workweek." 80 F. 4th at 1179 n.4. However, even if this Court were to agree with the *Wilson* court on this point, that does not mean that Defendant's compensation scheme falls within § 604(a). In fact, as the *Wilson* court went on to acknowledge, there is a "stark contrast" between the compensation schemes at issue in *Gentry* and *Wilson*. Whereas *Gentry* concerned a scheme where the guaranteed weekly salary was equal to eight hours of pay and therefore was computed on an hourly basis, *id.*, *Wilson* involved a fixed bi-weekly base salary above the FLSA minimum plus additional compensation, some of which was paid on an hourly basis, *id.* at 1178. As Plaintiffs point out (and Defendant does not refute), Plaintiffs are not paid in the same way as the *Wilson* employees. According to Plaintiffs, under Defendant's scheme, an employee with a day rate of $560 and a two-day Retainer Period (or "base salary") would make $2,800 for a five-day workweek. Under the *Wilson* scheme, however, the same employee would make $3,920—a $1,120 base salary *plus* $560 per day for each day worked. ECF No. 109 at 20-21. To the Court, it seems clear that Defendant's pay structure more closely resembles the pay structure at issue in *Gentry* than that in *Wilson*. As in *Gentry*, Plaintiffs' weekly guarantee was computed on an hourly or daily basis and additional compensation was paid for time worked *in excess of* the period that made up their Retainer.

The authorities discussed thus far indicate that § 604(b)—not § 604(a)—applies in the instant case. The Supreme Court's recent decision in *Hewitt* lends further support to this conclusion. In *Hewitt*, the respondent, Hewitt, was paid a on daily-rate basis, with no overtime compensation. Hewitt's employer, Helix, asserted that Hewitt was exempt from the FLSA's

protections because his compensation—which amounted to over $200,000 annually—made him a bona fide executive. The Court held that a high-earning employee, like Hewitt, is not compensated on a "salary basis" under § 602(a) when his paycheck is based solely on a daily rate, and thus he is entitled to overtime pay. *Hewitt*, 598 U.S. at 43-44.

In arriving at this holding, the Court found the word "basis" in § 602(a) signals "the **unit of time used to calculate pay**, and that unit must be a week or less frequent measure; it cannot be a day, or other more frequent measure, as it was for Hewitt." *Id.* at 52 (emphasis added). As already noted, the "unit of time" Defendant used to calculate the Retainer and additional compensation is "a day, or other more frequent measure." *See* ECF No. 111, Ex. 11-A; see also ECF No. 109, Ex. 24 Thomas Decl. at 141:17-20.

Moreover, the Court in *Hewitt* expressly advised that Helix could come into compliance with the salary-basis requirement for Hewitt and similar employees "in either of two ways. **It could add to Hewitt's per-day rate a weekly guarantee that satisfies § 604(b)'s conditions.** Or it could convert Hewitt's compensation to a straight weekly salary for time he spends on the rig." *Hewitt*, 598 U.S. at 60 (emphasis added). The Court did *not* say that adding a weekly guarantee to Hewitt's per-day rate would satisfy the conditions of § 602(a) or § 604(a)—which is essentially the position Defendant urges this Court to adopt.

Defendant leans heavily on the use of the phrase "or part" in § 602(a). *See* § 602(a) (emphasis added) (stating an employee is paid on a salary basis if the employee "regularly receives each pay period on a weekly, or less frequent basis, a predetermined amount constituting all **or part of** the employee's compensation."). According to Defendant, its Retainer satisfies this condition: it is a predetermined weekly amount over $455/$684 that constitutes *at least part of* an employee's total compensation. ECF 110 at 15.

Justice Kavanaugh, in his dissenting opinion in *Hewitt*, advanced a similar argument as Defendant. *Hewitt*, 598 U.S. at 65 (Kavanaugh, J., dissenting). Hewitt's daily rate was $963. Justice Kavanaugh reasoned that, because Hewitt was guaranteed $963 for any day he worked, by definition, he was guaranteed $963 for any week in which he worked. *Id.* "To be sure, if Hewitt worked multiple days in a week, then his $963 guaranteed weekly salary would only be part of his total weekly compensation. But . . . an employee's guaranteed weekly salary of at least $455 need only constitute 'all *or part*' of his total weekly compensation." *Id.* (quoting § 602(a)). Put in terms of Defendant's pay scheme, Hewitt had a one-day Retainer Period. According to Justice Kavanaugh, this structure satisfied the requirements of § 602(a). The majority, however, disagreed with this analysis:

> The dissent reasons that because Hewitt received more than $455 for a day's work, he must have been paid on a salary basis. That is a non-sequitur to end all non-sequiturs. **Hewitt's high daily pay ensured that the HCE rule's salary-*level* requirement would not have prevented his exemption: $963 (per day) is indeed more than $455 (per week). But before any discussion of salary level comes in, an employer must pay an employee on a salary *basis*.** And here is where it helps to really look at § 602(a)'s text, because it describes when an employee is paid on a "salary basis." He is paid that way (pardon the repetition) when he gets a "predetermined amount" that cannot be changed because of "the number of days or hours" he labors, but instead must be paid "without regard to [that] number"; when he receives his "full salary for any week" in which he works even one day; and when he is paid "on a weekly basis." Or, one might say that an employee is paid on "a salary basis," within the regulation's meaning, when he gets what ordinary people think of as a salary. And contra the dissent, the regulation's "all or part" reference says nothing different. That term makes clear that a worker can be paid on a salary basis even if he additionally gets non-salary compensation, like a bonus. But the employee still must be paid a salary. And Hewitt was not. He received a high day rate (higher than lots of salaries); but **he did not get a salary (of $963 or any other amount) because his weekly take-home pay could be as little as $963 or as much as $13,482, depending on how many days he worked.**

*Id.* at 54 n.5 (emphasis added) (internal citations omitted).

The majority's reasoning easily maps onto the instant case. While Defendant's Retainer policy might satisfy the salary-level requirement, that does not mean it automatically satisfies the

salary-basis requirement. And, like Hewitt, Plaintiffs' weekly take-home pay could be as little as their weekly guarantee or as much as several times greater, depending on how much time they worked beyond their Retainer Period.

The Court concludes that § 604(b) applies to Defendant's pay structure, primarily because Plaintiffs' weekly guarantees were computed on an hourly or daily basis and were based on less than a normal workweek of 40 hours. To be clear, the Court agrees with Defendant that *Hewitt* unambiguously confirms that "a pay scheme meeting § 602(a) and the HCE rule's other requirements does not also have to meet § 604(b) to make a worker exempt." *Hewitt*, 598 U.S. at 60 n.3. But, as here, when § 602(a) does not apply, § 604(b) provides the alternative route for satisfying the salary basis requirement.

### ii.  The reasonable relationship test under § 604(b)

Under § 604(b), a reasonable relationship must exist between the weekly guarantee and an employee's actual earned pay. As this Court has previously explained, the reasonable relationship test "ensures that the weekly guarantee is close to what an employee would make based on a daily rate if the employee worked a normal amount of time during the week. What matters is whether the guaranteed weekly minimum accurately reflects the individual's 'salary.'" *Alvarez*, 2021 WL 3571223, at *3; *see also Hewitt*, 598 U.S. at 47 ("Those conditions create a compensation system functioning much like a true salary—a steady stream of pay, which the employer cannot much vary and the employee may thus rely on week after week.").

"In applying [the reasonable relationship] test, the Department of Labor 'compares the exempt employee's actual earnings to his/her guaranteed weekly salary.' A ratio at or near 1.5-to-1 of actual earnings to guaranteed weekly salary is generally required to satisfy the reasonable-relationship test." *Gentry*, 2022 WL 658768, at *6 (quoting *Sonnier v. Recon Mgmt. Servs. Inc.*,

No. 2:20-CV-00002, 2022 WL 141779, at *6 (W.D. La. Jan. 14, 2022)).

Defendant argues that "if the Court determines that §604(b) applies to Plaintiffs, it must decertify the current putative collective class before it makes a ruling on the merits of whether or not NES satisfied §604(b) with respect to any of the Plaintiffs." ECF No. 110 at 26.[2] Defendant contends decertification is necessary because, to determine if a class member's Retainer met the reasonable relationship test, the Court will have to conduct "a highly individualized inquiry into each Plaintiff's circumstances" that cannot "be made on a collective basis for all Plaintiffs." *Id.*

There are self-evident flaws in this argument. For one, if this is a request for decertification, it is untimely. *See* Minute Entry Dated 8/31/2023 ("Motion for Decertification is due by 10/02/2023"). Second, and more importantly, the Court finds no valid reason to decertify this collective class. Pursuant to the Federal Rule of Evidence 1006, Plaintiffs have "summarized data from NES's payroll records and offer letters in a chart that compares the ratio of total earnings to the Retainer amount." ECF No. 123 at 12; *see also* ECF No. 123-1, Ex. 27 Afhami Decl.; ECF No. 123-1, Ex. 27-B FRE 1006 Reasonable Relationship Summary; Fed. R. Evid. 1006 ("The proponent may use a summary, chart, or calculation to prove the content of voluminous writings,

---

[2] In a seemingly last-ditch effort to evade the application of § 604(b) to the instant case, Defendant also urges the Court to invalidate the salary basis requirement (or, at minimum, the reasonable relationship portion of the requirements) "as exceeding the DOL's authority to 'define[] and delimit[]' the FLSA's White-Collar exemptions." ECF No. 122 at 35. Defendant raises this argument for the first time in the three-plus years this litigation has been ongoing in its Response to Plaintiffs' Motion for Partial Summary Judgment. *See* ECF No. 122 at 35-43. Though skeptical of Defendant's argument, the Court refrains from reaching the merits, as the issue is not properly before the Court. *See, e.g.*, *Cutrera v. Bd. of Sup'rs of Louisiana State Univ.*, 429 F.3d 108, 113 (5th Cir. 2005) ("A claim which is not raised in the complaint [here, answer] but, rather, is raised only in response to a motion for summary judgment is not properly before the court."); *U.S. Bank Nat'l Ass'n as Tr. for Registered Holders of Aegis Asset Backed Sec. Tr. Mortg. Pass-Through Certificates, Series 2005-4 v. Richardson*, No. 3:17-CV-2271-L, 2019 WL 1115059, at *5 (N.D. Tex. Mar. 11, 2019) (declining to consider defendants' argument raised for the first time in response to plaintiff's summary judgment motion and without leave to amend pleadings).

recordings, or photographs that cannot be conveniently examined in court."). The declaration of Omid Afhami, the Information Systems Manager and Data Specialist who performed the calculations and prepared the summaries, states that "[t]o the extent the Court (or NES) so require, Plaintiffs will make all documents relied on in making the attached FRE 1006 summaries available for examination or copying (or both) at a reasonable time and place and/or produce them in Court." ECF No. 123-1, Ex. 27 Afhami Decl. at ¶ 14.

Defendant does not request the underlying documents Plaintiffs relied on, nor does it contest the summaries. In fact, Defendant "does not even attempt to satisfy the reasonable-relationship test, which alone is fatal to its claimed exemptions." *Gentry*, 2022 WL 658768, at *6; *see also Tyler v. Union Oil Co. of California*, 304 F.3d 379, 402 (5th Cir. 2002) ("[FLSA] exemptions are construed narrowly against the employer and the employer has the burden of proving that an employee is exempt.").

As Plaintiffs' Reasonable Relationship Summary shows, "Plaintiffs' actual earnings exceeded the legally permissible ratio of 1.5-to-1 in more than 93.8% of workweeks within the three-year statute of limitations (3,521 out of 3,753 weeks) and 96.2% of workweeks within the two-year statute of limitations (1,890 out of 1,964 weeks)." ECF No. 123-1, Ex. 27 Afhami Decl. at ¶ 12. "On average, the ratio of NES's Retainer to Plaintiffs' 'actual earnings' was 1-to-3.62 for all workweeks during the three-year limitations period." *Id.* ¶ 11. Stated differently:

> The Retainer covers a tiny fraction of the employees "usual earnings at the assigned hourly [or] daily . . . rate" for their "normal scheduled workweek." 29 C.F.R. 541.604(b). For example, the earnings of an employee with a 2-day Retainer Period will reach or exceed 150% of their Retainer every time they work more than 2 days in a workweek. Ex. 4, 2017 US Placement Guide, at 17-18; Ex. 25, 2019 Retainer Policy; Ex. 26, Sloan Depo. at 76:10-19; Statement of Material Fact ("SOF") # 10-11 (chart of pay formulas). And the earnings of hourly Plaintiffs on a 15-hour retainer will exceed 150% of their Retainer once they work 22.5 hours in a workweek. Ex. 4, 2017 US Placement Guide, at 17-18; Ex. 25, 2019 Retainer Policy.

ECF 109 at 11.

The Supreme Court in *Hewitt* repeatedly stated that the central meaning of "salary" is "a **steady and predictable** stream of pay, week after week after week." *Hewitt*, 598 U.S. at 54 (emphasis added). Defendant's scheme contravenes the heart of what "salary" means: While Plaintiffs' pay might be steady and predictable in the sense that no allegations have been made that Defendant issues payments in an untimely and irregular manner, the actual total amount of compensation is far from steady and predictable.

In sum, the Court finds that, given the facts in this case, § 604(b) applies, and Defendant has failed to carry its burden of demonstrating that the Plaintiffs were exempt employees.[3] Because

---

[3] Plaintiffs point to the several instances in which Defendant paid Plaintiffs less than their "guaranteed" Retainer as further evidence that they were not compensated on salary basis. Plaintiffs assert that, when they worked less than the time required for their Retainers, Defendant failed to pay Plaintiffs their full Retainer in 18 out of 19 instances within the 3-year limitations period, and in five out of six instances within the 2-year limitations period. *See* ECF No. 109-1, Ex. 27-A FRE 1006 Retainer Summary. The relevant regulation provides that "[a]n employer who makes improper deductions from salary shall lose the exemption if the facts demonstrate that the employer did not intend to pay employees on a salary basis. An actual practice of making improper deductions demonstrates that the employer did not intend to pay employees on a salary basis." 29 C.F.R. § 541.603(a). The regulation lays out several factors for courts to consider when determining whether an employer has an actual practice of improper deductions, including "the number of improper deductions, particularly as compared to the number of employee infractions warranting discipline; the time period during which the employer made improper deductions; the number and geographic location of employees whose salary was improperly reduced; the number and geographic location of managers responsible for taking the improper deductions; and whether the employer has a clearly communicated policy permitting or prohibiting improper deductions." *Id.* The regulation also specifies that "isolated" or "inadvertent" improper deductions will not result in the loss of an exemption, so long as the employer reimburses affected employees for the improper deductions. *Id.* at § 541.603(c). At least one district court in this circuit has held that plaintiffs have the burden of proof in demonstrating the existence of an actual practice. *See Sonnier v. Recon Mgmt. Servs. Inc.*, No. 2:20-CV-00002, 2021 WL 5868102, at *2 (W.D. La. Dec. 10, 2021) (citing *Yourman v Giuliani*, 229 F.3d 124, 1285 (2d Cir. 2000)). The record does not contain sufficient evidence for the Court to find that Defendant had an actual practice of making improper deductions during the limitations period relevant to this lawsuit (which, as discussed elsewhere in this opinion, is two years). The Court does not dwell on this analysis because it finds that Plaintiffs were misclassified as exempt employees, regardless of whether Defendant had an actual practice of not paying Plaintiffs their full Retainers when warranted. In Plaintiffs' words, "even if NES had

it is undisputed that Plaintiffs were not paid overtime for time worked beyond 40 hours, Defendants are liable for unpaid overtime compensation.

### D.  Whether Plaintiff Alvarez is exempt under New Mexico law

In addition to the FLSA collective action claims, Plaintiff Alvarez asserts a claim for unpaid overtime pursuant to the NMMWA. Alvarez was based in Midland, Texas but worked in Carlsbad, New Mexico 2-3 times per week. ECF No. 123 at 14; ECF No. 113-1, Alvarez Dep. at 28:12-13. She testified in her deposition that she normally worked "12 to 16" hours per day. ECF No. 113-1, Alvarez Dep. at 103:7-14.

Defendant contends that, because "Alvarez has absolutely no evidence of overtime hours worked in New Mexico, her NMMWA should be dismissed." ECF No. 110 at 25. Plaintiffs rely on *Martinez v. FedEx Ground Package Sys., Inc.*, No. CV 20-1052 SCY/LF, 2022 WL 4464781 (D.N.M. Sept. 26, 2022) to rebut Defendant's argument that Alvarez must show she worked overtime hours in New Mexico to have a claim under the NMMWA. ECF No. 123 at 28. However, Plaintiffs' reliance on this case is misplaced. *Martinez* involved a plaintiff who was a New Mexico resident working for a New Mexico company, splitting each work day between New Mexico and another state, and starting and ending each work day in New Mexico. *Martinez*, 2022 WL 4464781, at *9. Given this unique set of facts, the *Martinez* court confined "its holding narrowly to a rejection of Defendant's argument that the NMMWA *categorically* never applies to hours worked out of state." *Id.* (emphasis added). In contrast to the *Martinez* plaintiff, Alvarez is based in Texas, Defendant is headquartered in Texas, and there is no indication that Alvarez splits her time over the course of the day between New Mexico and another state.

---

made good on its Retainer, it does not bear a 'reasonable relationship' to Plaintiffs' 'actual earnings.'" ECF No. 123 at 39.

The Court agrees with Defendant that the NMWWA "appears to be concerned with whether the employment is done in New Mexico" without reference to an employer's residence. *Rodriguez v. Peak Pressure Control*, L.L.C., No. 217CV00576JCHJFR, 2020 WL 3000414, at *3 (D.N.M. June 4, 2020) (addressing the question of whether the NMWWA covers work done by an employee who works interstate between New Mexico and Texas and is employed by Texas-based employers). Thus, the Court finds that Alvarez is afforded protection by the NMMWA for alleged overtime work done *in* New Mexico. *See id.*

Defendant next argues that "Alvarez's NMMWA overtime claim is also subject to dismissal because she was paid on a salary basis and satisfied the administrative exemption's duties test and therefore, was properly classified as exempt from the NMMWA's overtime requirements." ECF No. 110 at 25. As already discussed, Plaintiffs were not paid on a salary basis, and therefore, Defendant misclassified Plaintiffs as exempt employees under the FLSA. Because Alvarez is not exempt under the FLSA, she is also not exempt under the NMMWA. *See, e.g.*, *Brown v. Lightning Oilfield Servs., Inc.*, No. MO19CV00223DCRCG, 2021 WL 5230857, at *4 (W.D. Tex. June 10, 2021) ("As Plaintiffs were not compensated pursuant to a salary basis, [Defendant] cannot as a matter of law maintain its administrative, executive, or highly compensated employee exemption defenses under either the FLSA or NMMWA."), *report and recommendation adopted*, No. MO:19-CV-223-DC, 2021 WL 5197434 (W.D. Tex. June 28, 2021).

The Court concludes that Alvarez is not exempt under the NMMWA, but that her NMMWA overtime claim applies only to those workweeks in which she worked overtime hours within the state of New Mexico. A genuine issue of material fact exists, because while Defendant claims there is no evidence of overtime hours worked by Alvarez in New Mexico, ECF No. 110

at 25, evidence exists that Alvarez normally worked "12-16 hours per day" and in New Mexico 2-3 days per week, ECF No. 123 at 29.

### E. Damages

#### i. Willfulness

Claims brought under the FLSA are generally subject to a two-year statute of limitations, but if the violation is "willful," a three-year limitations period applies. 29 U.S.C. § 255(a). The Court must decide whether Plaintiffs have established that Defendant willfully violated the FLSA to invoke the statute's three-year statute of limitations.

The word "willful" is "considered synonymous with such words as 'voluntary,' 'deliberate,' and 'intentional.'" *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988). "A willful violation occurs when the 'employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited.' Plaintiffs bear the burden of establishing a defendant's willfulness." *Dacar v. Saybolt, L.P.*, 914 F.3d 917, 926 (5th Cir. 2018), *as amended on denial of reh'g and reh'g en banc* (Feb. 1, 2019) (quoting *McLaughlin*, 486 U.S. at 133). To show reckless disregard, "merely negligent or unreasonable conduct is not sufficient." *Clay v. New Tech Glob. Ventures, LLC*, No. CV 16-296-JWD-CBW, 2019 WL 1028532, at *6 (W.D. La. Mar. 4, 2019); *see also id.*

Plaintiffs first argue that, because willfulness requires evaluating credibility or state of mind, it is inappropriate to decide on summary judgment. ECF No. 123 at 36. It is true that "[b]ecause willfulness is a question of fact, summary judgment in favor of the employer is inappropriate **if the plaintiff has introduced evidence sufficient to support a finding of willfulness**." *Ikossi-Anastasiou v. Bd. of Supervisors of Louisiana State Univ.*, 579 F.3d 546, 552 (5th Cir. 2009) (emphasis added). Thus, to avoid summary judgment, Plaintiffs must "raise a fact

question as to whether [Defendant] knew or recklessly disregarded that its [compensation scheme] was prohibited by the FLSA." *Id.* Plaintiffs fail to do so.

To begin, Plaintiffs do not actually point to any "disputed factual issue[s] that turn[] on the credibility of the parties, or their subjective state of mind," thereby making summary judgment inappropriate. ECF No. 123 at 36. To show willfulness, Plaintiffs argue that Defendant "recklessly or knowingly failed to guarantee the Retainer," as evidenced by its failure to pay the Retainer 95% of the time when Plaintiffs worked less than the portion of the week covered by their Retainer, and "recklessly disregarded the requirement that salaries be paid on a weekly or less frequent basis," as evidenced by a 2016 email in which Defendant's counsel informed it of recent developments in the caselaw pertaining to the reasonable relationship and salary-basis tests. ECF No. 123 at 38; ECF 123-1, Ex. 36, Counsel's Letter to NES, Sept. 28, 2016.

The record shows that Defendant failed to pay Plaintiffs their full "guaranteed" Retainer on several occasions. *See* ECF No. 109-1, Ex. 27-A FRE 1006 Retainer Summary. Defendant's corporate representative testified in a deposition that these were mistakes "[b]ecause it's our practice to ensure that our employees receive their guaranteed retainer plus any additional compensation per their contract." ECF No. 122-1, Ex. 1 Blackwell Dep. at 33:3-5; *see also id.* at 24:24-25:1 ("A mistake can happen. And once notified of said mistake, the immediate process is to review and fix."). The Court finds that these instances of underpayment are not sufficient evidence on their own to support a finding that Defendant recklessly or knowingly failed to pay Plaintiffs on a salary basis. Moreover, the email Plaintiffs cite to is devoid of evidence that Defendant took actions that recklessly disregarded its obligations under the FLSA. To the contrary, the email supports Defendant's contention that it was routinely conferring with its counsel as it developed and implemented its Retainer pay structure. *See* ECF 123-1, Ex. 36 Counsel's Letter to

NES, Sept. 28, 2016.

Given the 2016 DOL audit of Defendant's payroll practices, Defendant was on notice that its actions were governed by the FLSA and that its pre-2016 compensation structure was not fully compliant. The record before the Court shows that, as part of its settlement with DOL, Defendant adopted the at-issue Retainer pay structure as well as a FLSA Questionnaire that analyzed each Candidate's duties and whether they should be classified as exempt. ECF No. 110 at 5; *see also* ECF No. 111, Ex. 3 Sloan Dep. at 89:2-91:2, 96:9-97:3. Defendant created both based upon the advice of its inside and outside counsel. ECF No. 110 at 5. Moreover, Defendant provided "copies of both the FLSA Questionnaire and newly revised Contract Offer Letters describing the Retainer pay policy to the DOL for its review and as evidence of NES's compliance with the FLSA on a going forward basis." ECF No. 110 at 7. As Defendant details, DOL did not object to the FLSA Questionnaire or Retainer practice. Per Defendant's sworn deposition testimony, Defendant believed "the DOL's closing its audit and agreeing to the settlement terms was an informal approval that these proposed pay practices complied with the FLSA." ECF No. 110 at 8; *see also* ECF No. 111, Ex. 3 Sloan Dep. at 131:5-18. Defendant's consultations with counsel and engagement with DOL cut against a finding of willfulness. *See, e.g.*, *Halferty v. Pulse Drug Co., Inc.*, 826 F.2d 2, 3 (5th Cir.1987) (finding no willfulness where employer "consulted with its attorney, and examined the DOL bulletin").

The Court also finds no evidence in the record that Defendant knew its post-2016 pay practice violated the FLSA or that it ignored concerns from DOL or employees about the scheme's legality. *See, e.g.*, ECF No 11, Ex. 2 Thomas Decl. at ¶ 16; *Mohammadi v. Nwabuisi*, 605 F. App'x 329, 332 (5th Cir. 2015) ("[E]mployers act willfully when they know their pay structures violate the FLSA or ignore complaints brought to their attention."). Lastly, as Defendant notes, some of

the issues in this case have been clarified by recent judicial developments, including the Supreme Court's decision in *Hewitt*. ECF 110 at 34-35. For example, in the 2016 audit, DOL determined that Candidates who were paid a day rate of at least $455 and met the duties test for the applicable exemption were properly classified as exempt. ECF 110 at 4; ECF 111, Ex. 5 at 11. *Hewitt*, however, makes clear that this is not necessarily the case. 598 U.S. at 54 n.5; *see also Allen v. Coil Tubing Servs.*, L.L.C., 846 F. Supp. 2d 678, 713 (S.D. Tex. 2012) (finding no willfulness where employer's "interpretation of the MCA Exemption in the Relevant Period was not unreasonable in light of then-existing legal precedent"), *aff'd*, 755 F.3d 279 (5th Cir. 2014).

Plaintiffs contend that willfulness cannot be decided before liability. ECF No. 123 at 37. While courts have declined to determine the issue of damages before a liability finding is made, "plaintiffs cite to no case law standing for the proposition that, as a matter of law, the statute of limitations cannot be decided before the issue of liability. Indeed, precedent from this circuit indicates the exact opposite." *Clay*, 2019 WL 1028532, at *7 (listing cases). Regardless, Plaintiffs' argument is moot, because the Court has already found that Defendant violated the FLSA by classifying Plaintiffs as exempt but failing to pay them on a salary basis as required by law.

Without evidence to raise a question of material fact, Plaintiffs' allegations of willfulness cannot survive the summary judgment stage, which means that their FLSA claims are subject to the default two-year limitations period.

### ii. Liquidated Damages

In cases of FLSA violations, the FLSA provides for actual damages in unpaid overtime as well as an "additional equal amount as liquidated damages." 29 U.S.C. § 216(b). However, the Court may "decline to award such damages (or reduce the amount) if the court concludes that the employer acted in 'good faith' and had 'reasonable grounds' to believe that its actions complied

with the FLSA." *Singer v. City of Waco, Tex.*, 324 F.3d 813, 822–23 (5th Cir. 2003) (citing 29 U.S.C. § 260). Whereas the burden is on Plaintiffs to show willfulness, Defendant "bears the 'substantial burden' of proving the reasonableness of its conduct." *Id.* "[G]ood faith requires some duty to investigate potential liability under the FLSA." *Barcellona v. Tiffany Eng. Pub, Inc.*, 597 F.2d 464, 469 (5th Cir. 1979).

As a threshold matter, the Court's determination that Defendant's FLSA violation was not willful does not preclude an award of liquidated damages. *Dacar*, 914 F.3d at 931. Indeed, the Fifth Circuit has held that "[e]ven if the district court determines that the employer's actions were taken in good faith and based on reasonable grounds, the district court still retains the discretion to award liquidated damages." *Heidtman v. Cnty. of El Paso*, 171 F.3d 1038, 1042 (5th Cir. 1999).

Through the burden has shifted to Defendant, the Court finds that the same facts that precluded a finding of willfulness also preclude a finding that Defendant did not act in good faith or lacked reasonable grounds when it adopted the at-issue compensation scheme after the 2016 DOL audit. *See, e.g.*, *Gentry*, 2022 WL 658768, at *7 ("The most common way of proving good faith is when an employer proves reliance on the advice of the [DOL] or the advice of counsel on its classification and wage practices."); *Hoenninger v. Leasing Enterprises, Ltd.*, 803 F. App'x 756, 760 (5th Cir. 2020) (finding that district court did not abuse its discretion by declining to award liquidated damages because "the record in this case contains testimony indicating that advice received during a Department of Labor investigation led [employer] to believe that their practices . . . complied with FLSA").

Thus, the Court declines, in an exercise of its discretion, to award Plaintiffs liquidated damages.

### iii.  Plaintiffs' prima facie burden under *Mt. Clemens*

As a final matter, Defendant moves for summary judgment on Plaintiffs' claims because it argues that Plaintiffs have "failed to produce sufficient evidence to create a 'just and reasonable' inference of the amount of overtime Plaintiffs allegedly worked but for which they claim they were not compensated." ECF No. 126 at 4.[4] Generally, "a plaintiff who brings a claim for unpaid overtime bears 'the burden of proving that he performed work for which he was not properly compensated.'" *Flores v. FS Blinds, L.L.C.*, 73 F.4th 356, 362 (5th Cir. 2023) (quoting *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946), *superseded by statute on other grounds*). However, the Supreme Court established a more lenient burden-shifting rule when an employer has failed to keep time records:

> "[A]n employee [carries] out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference. The burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence. If the employer fails to produce such evidence, the court may then award damages to the employee, even though the result be only approximate.

*Mt. Clemens Pottery Co.*, 328 U.S. at 687–88. This standard, while relaxed, still requires a plaintiff to "present more than 'unsubstantiated assertions.'" *Flores*, 73 F.4th at 362 (quoting *Harvill v. Westward Commc'ns, L.L.C.*, 433 F.3d 428, 441 (5th Cir. 2005)).

It is undisputed here that Defendant's "time records do not reflect the number of hours an employee works." ECF No. 110 at 27. Thus, the *Mt. Clemens* standard applies. Plaintiffs have produced calculations of unpaid overtime for every Plaintiff by workweek. *See* ECF No. 123-1,

---

[4] Defendant states it "does not move for summary judgment on Loyda Alvarez's claims on this basis due to her production of evidence in addition to the calculations included in Plaintiffs' Amended Disclosures." ECF 110 at 27 n.23.

Ex. 32 Damage Model.[5] The record has several explanations of their damage model, including the following:

> The number of days worked each workweek, based on NES's "timesheets," are included in Plaintiffs' damage model. Ex. 31, Decl. of Omid Afhami at ¶ 5; Ex. 32, Damage Model. Plaintiffs' amended disclosures calculate damages for each Plaintiff for every workweek using actual hours reported for hourly workers or an average working day of 10 hours for day rate workers. Ex. 31 at ¶ 5; Ex. 32; Ex. 33 at 11. The Plaintiffs chosen by the Parties to participate in discovery ("Representative Plaintiffs") testified they worked 10 (or more) hours per day. . . . Plaintiffs' amended damages calculation, because it uses a 10-hour day for every day worked, likely *under-estimates* Plaintiffs' damages because the evidence is Plaintiffs worked considerably more hours.

ECF No. 123 at 13-14.

The evidence supporting Plaintiffs' overtime hours "includes sworn testimony from the Representative Plaintiffs, time sheet data, and statistics of the hours all Plaintiffs were required to work per their offer letters." ECF 123 at 32. Plaintiffs selected an average working day of 10 hours for day-rate Plaintiffs because the "mode of the required hours per day in Plaintiffs' offer letters is 10" and the Representative Plaintiffs testified that they worked 10 or more hours per day. *Id.* at 13. The damages model also took into account when Plaintiffs worked partial days by prorating their hours. ECF No. 123-1, Ex. 31 Afhami Decl. at ¶ 14. The Fifth Circuit has repeatedly accepted estimates of weekly overtime hours derived from plaintiffs' testimony as adequate evidence. *See, e.g.*, *Flores*, 73 F.4th at 363 ("[Plaintiffs'] testimony alone would be sufficient. . . . This is so even though Plaintiffs' testimony offers only an estimated average of hours worked.").

While Plaintiffs did not submit deposition testimony for every Opt-In Plaintiff, Defendant

---

[5] "In a FLSA collective action, the statute of limitations for a named plaintiff . . . runs from the date that the plaintiff files the complaint, while the limitations period for an opt-in plaintiff runs from the date the written opt-in consent is filed in court." *Tarango v. Chemix Energy Servs.*, LLC, No. SA-18-CV-00370-XR, 2021 WL 1269905, at *2 (W.D. Tex. Apr. 6, 2021). The Court thus asks that Plaintiffs submit a revised damages model based on a two-year statute of limitations, meaning the model should run back two years from the date the complaint was filed for Plaintiff Alvarez, and two years from the date notices of consent were filed for the opt-in Plaintiffs.

and Plaintiffs agreed "the Representative Plaintiffs would represent the FLSA collective." ECF No. 123 at 32; *see also* ECF No. 80 (agreement regarding representative discovery). Under *Mt. Clemens*, plaintiffs do not have to establish the hours or days worked through the testimony of each individual plaintiff—even when plaintiffs have diverse jobs with different titles and tasks, as is the case here. *See, e.g.*, *Donovan v. New Floridian Hotel, Inc.*, 676 F.2d 468, 472 (11th Cir. 1982) (finding that in a case with a diverse group of employees, each employee "need not testify in order to make out a prima facie case of the number of hours worked as a matter of 'just and reasonable inference.'"); *see also Clark v. Centene Co. of Texas, L.P.*, 104 F. Supp. 3d 813, 830–31 (W.D. Tex. 2015) ("Under *Mt. Clemens*, FLSA plaintiffs may present testimony from representative employees as part of their proof of the prima facie case.").

Based on the testimony of the Representative Plaintiffs and the documentary evidence in the record, the Court finds that Plaintiffs have presented enough evidence to carry their prima facie burden under *Mt. Clemens.* While the evidence on overtime owed may not be "perfectly accurate," the *Mt. Clemens* standard does not require this, "since the employee should not be penalized when the inaccuracy is due to a defendant's failure to keep adequate records." *Donovan v. Hamm's Drive Inn*, 661 F.2d 316, 318 (5th Cir. 1981).

Because Plaintiffs have a made a credible showing that they have performed work that was not properly compensated, the burden now shifts to Defendant to rebut Plaintiffs' showing. As here, "when the employer fails to keep time records, he must 'disprove' the employee's testimony that the Act was violated." *Skipper v. Superior Dairies, Inc.*, 512 F.2d 409, 420 (5th Cir. 1975). The Court denies Defendant's Motion for Summary Judgment with respect to Defendant's argument that Plaintiffs have failed to meet their initial burden under *Mt. Clemens.*

## IV.    CONCLUSION

In conclusion, the Court **GRANTS** Plaintiffs' Motion for Partial Summary Judgment and **GRANTS IN PART AND DENIES IN PART** Defendant's Motion for Summary Judgment. To summarize the conclusions from this Memorandum & Order:

1. Defendant did not pay Plaintiffs on a salary basis under either 29 C.F.R. § 541.602(a) or § 541.604(b).

2. Plaintiff Alvarez is not exempt under the NMMWA, but her NMMWA overtime claim applies only to those workweeks in which she worked overtime hours within the state of New Mexico.

3. Defendant is not entitled to an exemption defense as a matter of law and misclassified Plaintiffs as exempt employees.

4. Defendant's violations of the FLSA were not willful, and therefore the two-year limitations period applies.

5. Defendant's violations were in good faith and Defendant had reasonable grounds to believe its actions were in compliance with the FLSA. Consequently, the Court declines to award Plaintiffs liquidated damages.

6. Plaintiffs have met their prima facie burden to show the amount of uncompensated overtime work they performed as a matter of just and reasonable inference.

**IT IS SO ORDERED.**

**SIGNED** at Houston, Texas, on this the 29th of December, 2023.

HON. KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE